**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric James Stenson, | No. CV-19-00306-TUC-JGZ (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Radiology Limited PLC, | |
| Defendant. | |

This *qui tam* action arises out of Plaintiff-Relator's allegations that Defendant unlawfully used "non-diagnostic" computer monitors for radiology image interpretation. (Doc. 25 ¶ 2.) Pending before the Court is Defendant Radiology Limited, LLC's Motion to Dismiss. (Doc. 33.) The motion has been fully briefed, and the Court finds that oral argument would not aid its decision on this matter. *See* LRCiv 7.2(f). For the reasons stated below, the Court will grant Defendant's Motion to Dismiss.

## BACKGROUND

Defendant Radiology Ltd. is a radiology practice located in Tucson, Arizona. (Doc. 33-1 at 7.) Plaintiff Eric James Stenson is an information-technology executive in the health care industry and avers that "he has learned and personally observed Defendant's radiology reading practices[,]" but is not a current or former employee of Defendant. (Doc. 25 ¶ 8.) Plaintiff contends that Defendant's use of the "non-diagnostic" monitors violates the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq*. (*Id.* ¶ 2.) Plaintiff asserts that the Centers for Medicare and Medicaid Services, or "CMS, and other Government Health Providers require that medical diagnostic displays be used by Defendant" to interpret

radiological images. (*Id.* ¶ 41.)

On June 7, 2019, Plaintiff filed suit in this Court as relator for the United States of America. (Doc. 1.)[1] On August 20, 2021, following several extensions of time, the United States filed a notice of election to decline intervention. (Doc. 19.)[2] The Court has provided the United States with notice and an opportunity to be heard regarding dismissal. (Doc. 40.) The United States does not oppose dismissal but requests any dismissal be without prejudice as to it only. (Doc. 41.)

Plaintiff filed his First Amended Complaint ("FAC") on November 1, 2021 and asserts five claims for relief under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"): (1) Defendant knowingly presented, or caused to be presented, false or fraudulent claims, statements, and records; (2) Defendant knowingly presented, or caused to be presented, false claims for medically unreasonable or unnecessary services; (3) Defendant knowingly made, used, or caused to be made or used, false records or statements material to false claims; (4) Defendant knowingly conspired to act in a manner that violated the FCA; and (5) Defendant knowingly presented, or caused to be presented, false or fraudulent claims, statements, and records for services not provided. (Doc. 25.)

On January 24, 2022, Defendant filed its motion to dismiss the FAC pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. (Doc. 33.) Defendant alleges that Plaintiff's complaint fails to state a claim because Plaintiff cannot, as a matter of law, show that Defendant made any false representations of compliance with statutory or regulatory requirements to CMS. Defendant contends that there are no requirements regulating the types of monitors that radiologists should use when interpreting images for general radiology modalities and further asserts that Plaintiff has not identified a single

---

[1] "Under the [False Claims Act], a private individual is empowered to bring an action on behalf of the U.S. government (termed a "*qui tam*" action) against any individual or company who has knowingly presented such a false or fraudulent claim to the U.S. government." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 n.7 (9th Cir. 1996).

[2] The United States is entitled to intervene in this action, at any time, for good cause. (Doc. 20.)

- 2 -

false claim that Defendant allegedly submitted to CMS. Defendant thus argues that dismissal is warranted because the FAC fails to plead sufficient facts to satisfy the essential elements of FCA liability under either Rule 8's plausibility requirement or Rule 9(b)'s particularity requirement.

**DISCUSSION**

**I.      STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) dismissal is proper when there is either a "'lack of cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

Rule 8 of the Federal Rules of Civil Procedure directs that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This tenet—that the court must accept as true all of the allegations contained in the complaint—is "inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Further, the court is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, while the Court must accept each of Plaintiff's factual allegations as true for purpose of the motion to dismiss, the Court need not accept Plaintiff's legal conclusions that the use of any particular monitor by the Defendant was indeed unlawful or in violation of regulatory requirements.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 679.

Additionally, complaints alleging fraud must also comply with Rule 9(b), which requires stating "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). To plead fraud with particularity, the alleging party must include the who, what, when, where, and how of the misconduct charged. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Because Rule 8 requires the pleading of a plausible claim, the Ninth Circuit has held that "claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso*, 637 F.3d at 1047.

## II. ANALYSIS

### A. Incorporation by Reference

As a threshold matter, when deciding a motion under Rule 12(b)(6) a court may only consider allegations contained in the pleadings, exhibits attached to the complaint, documents incorporated by reference in the complaint, and matters properly subject to judicial notice. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Otherwise, consideration of matters outside the pleadings converts the motion to dismiss into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Even if a document is not physically attached to a complaint, "it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

Here, Plaintiff attached email correspondence with Defendant's Director of IT as Exhibit 4 to his original complaint. (Doc. 1-4.) The FAC extensively references and relies on the correspondence as the basis for Plaintiff's allegation that Defendant uses particular types of monitors for radiology readings. (Doc. 25 ¶¶ 2, 8, 53, 57, 61, 65, 68, 69, 73, 74.)

However, the documents Plaintiff provided in Exhibit 4 are cropped images that do not contain the full text of each email. Defendant included with its motion to dismiss a request for the court to "take judicial notice, under the incorporation by reference doctrine, of Exhibit A attached to the accompanying Declaration of [Director of IT] Ron Cornett: a true and correct copy" of the email chain.[3] (Doc. 33-4 at 2.) Defendants ask that the Court consider the full email chain, rather than Plaintiff's cropped portions, as part of the motion to dismiss to rectify Plaintiff's selective quotation of documents integral to his pleading. *See Khoja,* 899 F.3d at 1002 ("The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."). Plaintiff does not object to the Court's consideration of the full email chain which "Defendant has more fulsomely produced." (Doc. 38 at 15.)

The Court will consider the full text of the email chain as appended to Defendant's motion to dismiss (*see* Doc. 33-5) without converting it to a motion for summary judgment because the email chain is incorporated by reference into the complaint. Plaintiff refers extensively to the email correspondence, and Mr. Cornett's statement that Defendant uses one Dell 30-inch UP3017 monitor and two 23-inch e2318h monitors for radiology readings forms the basis of Plaintiff's claim. The Court declines, however, to take judicial notice of the truth of any facts contained in the email chain, because reasonable people could debate

---

[3] The Court notes that judicial notice and incorporation by reference are two separate exceptions to the general rule that courts may not consider material outside the pleadings under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Both of these procedures permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways.") Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is not subject to reasonable dispute—that is, it is generally known or can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In contrast, "unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. Thus, a court may assume an incorporated document's contents as true for purposes of a motion to dismiss, though the Ninth Circuit has warned that courts should use caution when drawing inferences from an incorporated document: "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

what exactly the substance of the emails establishes. *Khoja*, 899 F.3d at 1000 (improper to judicially notice a transcript when its substance is subject to varying interpretations).

### B. False Claims Act—False Certification

Counts I and II of Plaintiff's FAC allege that Defendant knowingly presented false or fraudulent claims for payment and knowingly presented false claims for medically unreasonable or unnecessary services in violation of 31 U.S.C. § 3729(a)(1)(A). For the following reasons, the Court will dismiss Counts I and II.

"Enacted in 1863, the False Claims Act 'was originally aimed principally at stopping the massive frauds perpetrated by large contractors during the Civil War.'" *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016) (quoting *United States v. Bornstein*, 423 U.S. 303, 309 (1976)). The Act attaches liability not to underlying fraudulent activity, but to the claim for payment submitted to the government. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). In relevant part, the FCA imposes liability on anyone who:

(A)  knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C)  conspires to commit a violation of subparagraph [(A) or (B).]

31 U.S.C. § 3729(a)(1)(A)–(C). "What constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false." *Hopper*, 91 F.3d at 1266. The FCA "is not an 'all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 194 (citation omitted).

Plaintiff's claims are premised on the allegation that Defendant used unapproved, inferior devices to provide diagnostic radiology services but billed CMS as if it had used higher-priced, medical-grade equipment. (Doc. 25 ¶¶ 57, 70.) Plaintiff contends that Defendant's bills are thus false and actionable under the FCA because requests for

Medicare reimbursement require certification of compliance with all applicable laws and regulations. (Doc. 25 ¶¶ 25–30, 71 (citing Health Insurance Claim Form CMS-1500).)

False certification claims may be either express or implied. *See Ebeid*, 616 F.3d at 998 (recognizing both forms of false certification claims); *see also Escobar*, 579 U.S. at 181 (resolving circuit split and recognizing implied false certification as a basis for liability). "Express certification simply means that the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Ebeid*, 616 F.3d at 998. "Implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Id.* The Ninth Circuit has delineated the four elements of a false certification claim as: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *Id.* at 997.

### 1. Falsity

A False Claims Act action requires a claim that is, necessarily, false. *Cafasso*, 637 F.3d at 1055. "Subparagraphs (A) and (B) require that a defendant must submit or cause to be submitted a 'false or fraudulent claim' to the government." *United States ex rel. Khoury v. Intermountain Healthcare, Inc.*, 2022 WL 271760, at *5 (D. Utah Jan. 28, 2022). Plaintiff's FAC (Doc. 25) does not sufficiently allege facts demonstrating that Defendant submitted any false certifications of compliance or sought payment based on the same. As discussed below, Plaintiff's legal conclusion that CMS requires and conditions payment on the use of any particular monitor—whether "diagnostic" or "non-diagnostic"—for general radiology services is incorrect. Nor does the FDA require that radiologists use a particular type of monitor to conduct diagnostic readings.

The central contention of Plaintiff's FAC is Defendant's alleged "unlawful use of non-diagnostic computer monitors . . . for radiology image interpretation, as well as other uses in the treatment and diagnosis of disease[,] . . . which do not have FDA approval, do

not have Premarket Approval Application ('PMA'), and do not have a 510(k) exemption . . . in direct violation of the Food, Drug, and Cosmetic Act (21 U.S.C., Ch. 9 § 310 *et seq*.) (the 'FDCA')." (Doc. 25 ¶ 2.) Plaintiff's FAC, however, fails to state any facts to suggest Defendant failed to comply with material statutory, regulatory, or contractual requirements, which is fatal to any allegation of the submission of a false or fraudulent claim. *See Dan Abrams Co. LLC v. Medtronic Inc.*, 850 Fed. App'x 508, 510 (9th Cir. 2021) (affirming summary judgment where Plaintiff failed to cite any statute, regulation, or administrative manual to establish "that a contraindicated use of a device is categorically not reasonable and necessary.").

The FDA is "charged with the difficult task of regulating the marketing and distribution of medical devices without intruding upon decisions statutorily committed to the discretion of health care professionals." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001). Plaintiff's FAC outlines the FDA procedures for the approval of certain classes of medical devices. (Doc. 25 at ¶¶ 37–46.) Plaintiff also cites Section 331(a) of the FDCA to urge that the use of "Dell Non-Diagnostic Monitors" by radiologists is prohibited. (Doc. 25 at ¶¶ 44–45.) These FDA provisions do not support Plaintiff's claims. Section 331(a), 21 U.S.C., provides: "The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded" is prohibited. This section does not apply to Defendant, a radiology practice which performs imaging studies on patients and does not introduce medical devices into interstate commerce. (Doc. 33-1 at 7.) Plaintiff alleges that, in submitting Form CMS-1500, Defendant "certified that the diagnostic imaging is and has been conducted on FDA-approved monitors." (Doc. 25 ¶ 71.) However, the form asks a provider to certify compliance with "all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment," not with any other statutes such as the FDCA. (Doc. 25 ¶ 26 (quoting Form CMS-1500).)

Plaintiff's FAC fails to cite any other statute or other legal authority which mandates

that radiologists use a specific type of monitor, except in the area of mammography.[4] In fact, the article Plaintiff attached to his original complaint, ostensibly in support of his allegations, states that the authors' recommendations "do[] not imply it has to be an FDA-listed display product in every instance[.]" (Doc. 1-2 at 12.)[5] Further, in the email correspondence relied on by Plaintiff, Defendant's Director of IT states "these modalities have not been regulated by the Feds yet like they have done with mammography." (Doc. 33-5 at 4.) In sum, because nothing in the statute, regulations or guidance cited by Plaintiff, or reviewed by this Court, prohibits Defendant's use of "Dell non-diagnostic monitors" as alleged in this case, Defendant could not have submitted a false or fraudulent claim for its services in relation to the use of these monitors. *See Parker v. Sea-Mar Comm. Health Ctr.*, 853. Fed. App'x 197, 198 (9th Cir. 2021) (upholding dismissal where the billing practices at issue were not prohibited by applicable statutes, regulations, or guidance).

In response, Plaintiff focuses his argument on Count II of the complaint, which alleges that Defendant provided unreasonable and unnecessary services. (Doc. 38 at 4.) This argument also fails. CMS "is responsible for specifying those services that are covered under the 'reasonable and necessary' standard." *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 74 (2d Cir. 2006). Regarding diagnostic radiological tests, CMS directs that "[t]ests not ordered by the physician who is treating the beneficiary are not reasonable and necessary" and "[s]ervices furnished without the required level of supervision are not reasonable and necessary[.]" 42 C.F.R. § 410.32(a), (b)(1). The regulation does not delineate any requirements about the type of monitors radiologists must use to meet the "reasonable and necessary" obligation.

---

[4] CMS requirements for the reimbursement of mammography services are discussed below. Plaintiff disclaims any allegation that Defendant submitted false claims for mammography services, for which it uses 5k monitors. (Doc. 25 ¶ 56; *see also* Doc. 38 at 4.)

[5] Compton and Herman, Requirements for Medical Imaging Monitors. This article is not derived from a governmental agency; it is published by the Society for Imaging Informatics in Medicine (SIIM), "the leading healthcare professional organization for those interested in the current and further use of informatics in medical imaging." SIIM, https://siim.org/page/about_siim (last visited September 23, 2022).

In contrast to the dearth of instructions regarding the use of monitors in radiology generally, CMS has provided specific requirements for reimbursement of mammography services. 42 C.F.R. § 410.34. "[A] supplier of diagnostic or screening mammography services must . . . have a valid provisional certificate, or a valid certificate, that has been issued by FDA indicating that the supplier meets the certification requirements of . . . 21 CFR part 900, subpart B." 42 C.F.R. § 410.34(a)(7)(i), (b)(2), (c)(3). The FDA's mammography quality standards explicitly state that "[r]adiographic equipment designed for general purpose of special nonmammography procedures shall not be used for mammography[,]" and "[a]ll radiographic equipment used for mammography shall be specifically designed for mammography and shall be certified pursuant to § 1010.2 of this chapter." 21 C.F.R. § 900.12(b)(1)–(2).

In sum, CMS has delineated specific rules for mammography equipment, but declined to do so for radiology monitors generally. Thus, Plaintiff has failed to allege sufficient facts to support his legal conclusion that Defendant's use of allegedly inferior monitors rendered its general radiology services not reasonable and necessary. *See Dan Abrams Co. LLC*, 850 Fed. App'x at 510 (affirming summary judgment where Plaintiff failed to cite any statute, regulation, or administrative manual to establish "that a contraindicated use of a device is categorically not reasonable and necessary.").

### 2. Materiality

Counts I and II, which rely on the submission of a false claim pursuant to 31 U.S.C. § 3729(a)(1)(A), must be dismissed for failure to state a plausible claim. "Mere regulatory violations do not give rise to a viable FCA action." *Hopper*, 91 F.3d at 1267. Here, Plaintiff has failed to demonstrate even a regulatory violation.

The Supreme Court has observed that a "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Escobar*, 579 U.S. at 181. "The materiality standard is demanding." *Id.* at 194. Furthermore, a "misrepresentation cannot be deemed material merely because the Government designates

compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.*

Material misrepresentations go to "the very essence of the bargain" or are "at the core" of a program. *Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F.Supp.3d 1096, 1111 (D. Haw. 2021) (cleaned up). The "mere fact that § 1395y is a condition of payment, without more, does not establish materiality." *United States v. DaVita Inc.*, 2021 WL 1087769, at *6 (C.D. Cal. February 1, 2021). As discussed in Section II.B.1, *supra*, Plaintiff has not alleged any facts demonstrating that Defendant failed to comply with a particular statutory, regulatory, or contractual requirement, much less made a material misrepresentation about compliance.

### C. False Claims Act—False Records

Count III of Plaintiff's FAC alleges that Defendant knowingly made, used, or caused to be made, false records or statements material to false claims in violation of 31 U.S.C. § 3729(a)(1)(B).

The existence of a false or fraudulent claim is an essential element of a false records claim under the FCA. *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 335 (9th Cir. 2017). Because Plaintiff does not state a sufficient claim regarding Defendant's submission of any false or fraudulent claims, his false records claim must also fail. Thus, Count III of the FAC will be dismissed.

### D. False Claims Act—Conspiracy

Count IV of Plaintiff's FAC alleges that Defendant knowingly conspired to act in a manner that violated 31 U.S.C. § 3729(a)(1)(C). Plaintiff has withdrawn his conspiracy claim and does not object to Defendant's request that the Court dismiss it. (Doc. 38 at 15.) Accordingly, the Court will dismiss Count IV of the FAC.

### E. False Claims Act—Services not Provided

Count V of Plaintiff's FAC alleges that Defendant knowingly presented false or fraudulent claims for services not provided, in violation of 31 U.S.C. § 3728(a)(1)(A).

Plaintiff argues that "[b]ecause Defendant used a monitor that was not approved by the United States Government as a medical device, the radiology readings were not medical services provided and should not have been submitted to CMS for payment." (Doc 25 ¶ 116.) As discussed in Section II.B.1, *supra*, CMS does not condition payment for general radiology services on the use of a particular type of monitor, nor does any other statute or regulation govern the type of monitors that must be used for nonmammography radiology. Thus, Plaintiff's legal conclusion that Defendant's radiology readings "were not medical services" is unavailing. Plaintiff does not allege any facts demonstrating that Defendant presented any claims for services not provided. As such, this claim neither complies with Rule 9(b)'s particularity requirement, nor states a plausible claim for relief. The Court will dismiss Count V of the FAC.

**III.     AMENDMENT**

Rule 15, Federal Rules of Civil Procedure, mandates that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010). In assessing futility, denial of leave to amend is proper if it is clear that the complaint would not be saved by any amendment. *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013).

Plaintiff has already had the opportunity to amend his complaint once. The arguments he made to avoid dismissal grew beyond what he plead in his amended complaint. These new arguments were still insufficient to state a valid claim. Plaintiff's *qui tam* action turns on the incorrect legal conclusion that radiologists must use a particular type of monitor to read general radiological images. No such requirement exists. As a result, The Court finds that Plaintiff cannot allege any additional facts that could save his complaint and further amendment would be futile.

## CONCLUSION

Plaintiff's FAC (Doc. 25) fails to state facts to suggest Defendant's failure to comply with material statutory, regulatory, or contractual requirements; this failure is fatal to any allegation of the submission of a false or fraudulent claim. Plaintiff's FAC does not state a plausible claim for relief under Rule 8, much less comply Rule 9(b)'s particularity requirement. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Complaint (Doc. 25) be dismissed **WITH PREJUDICE**. Dismissal as to the United States shall be **WITHOUT PREJUDICE**. The Clerk of Court is directed to close the file in this action.

Dated this 29th day of September, 2022.

Honorable Jennifer G. Zipps
United States District Judge