**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric James Stenson,<br><br>    Plaintiff,<br><br>v.<br><br>Radiology Ltd., LLC,<br><br>    Defendant. | No. CV-19-00306-TUC-JGZ<br><br>**ORDER** |

In this *qui tam* action, Plaintiff-Relator Eric James Stenson alleges Defendant Radiology Ltd., LLC violated the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), by its unlawful use of "consumer grade" computer monitors for diagnostic radiology readings. (Doc. 53 ¶¶ 2–3.) After remand from the Ninth Circuit Court of Appeals, Plaintiff filed his Second Amended Complaint ("SAC"). (Doc. 53.) Pending before the Court is Defendant's motion to dismiss that complaint. (Doc. 56.) The motion has been fully briefed. (*See* Docs. 56, 59, 62.) For the reasons stated below, the Court will deny the motion.[1]

**BACKGROUND**

On June 7, 2019, Plaintiff filed suit in this Court as relator for the United States of America. (Doc. 1.)[2] In his First Amended Complaint ("FAC"), Plaintiff asserted five FCA

---

[1] The Court finds that oral argument would not aid its decision on this matter. *See* LRCiv 7.2(f).

[2] "Under the [False Claims Act], a private individual is empowered to bring an action on behalf of the U.S. government (termed a "*qui tam*" action) against any individual or company who has knowingly presented such a false or fraudulent claim to the U.S. government." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 n.7 (9th Cir. 1996). On August 20, 2021, following several extensions of time, the United States elected

claims, and alleged Defendant: (1) knowingly presented, or caused to be presented, false or fraudulent claims, statements, and records; (2) knowingly presented, or caused to be presented, false claims in violation of the general Medicare statute's requirement that claimed services be "reasonable and necessary"; (3) knowingly made, used, or caused to be made or used, false records or statements material to false claims; (4) knowingly conspired to act in a manner that violated the FCA; and (5) knowingly presented, or caused to be presented, false or fraudulent claims, statements, and records for services not provided. (Doc. 25.) Plaintiff withdrew the conspiracy claim, and the Court granted Defendant's motion to dismiss the remaining claims, concluding Plaintiff failed to sufficiently plead two of the four elements necessary to prove an FCA claim: falsity and materiality. (*See* Doc. 38 at 15; Doc. 43.)

On appeal, the Ninth Circuit Court of Appeals held that Plaintiff had sufficiently pleaded the elements of falsity and materiality, but only as to Plaintiff's claim that Defendant violated the general Medicare statute's requirement that claimed services be reasonable and necessary. *United States ex rel. Stenson v. Radiology Ltd., LLC*, No. 22-16571, 2024 WL 1826427, at *2–3 (9th Cir. Apr. 26, 2024).[3] The court rejected Plaintiff's argument that Defendant's submissions were false due to lack of Food and Drug Administration (FDA) approval of the Dell Monitors or due to the Defendant's alleged use of misleading billing codes—an argument first presented by Plaintiff on appeal. *Id.* The court instructed this Court to "grant Stenson leave to amend the FAC to the extent that he wishes to proceed on grounds other than an FDA-approval theory." *Id.* at *5.

Plaintiff filed his SAC on June 28, 2024. (Doc. 53.) The SAC asserts the single FCA claim recognized by the court of appeals—that Defendant knowingly presented, or caused to be presented, false claims for medically unreasonable or unnecessary services under 31 U.S.C. § 3729(a)(1)(A). (*Id.* at 19–21.)

---

not to intervene. (Doc. 19.) Nonetheless, the United States may intervene at any time for good cause. (Doc. 20.) The Court has provided the United States with notice and an opportunity to be heard regarding dismissal. (Doc. 40.) The United States does not oppose dismissal but requests any dismissal be without prejudice as to it only. (Doc. 41.)

[3] The Ninth Circuit's memorandum opinion is also found on the docket at (Doc. 50-1).

On August 26, 2024, Defendant filed its Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rules 12(b)(6) and 9(b). (Doc. 56.) Defendant argues the SAC "does not plead plausible facts that Radiology Ltd. acted with scienter, nor does it allege with particularity the submission of false claims." (Doc. 56-1 at 6.) Plaintiff opposes the Defendant's arguments and argues the appeals court previously rejected Defendant's arguments by its general statement that the FAC stated a claim for relief.

## DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) dismissal is proper when there is either a "'lack of cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

Rule 8 of the Federal Rules of Civil Procedure directs that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The tenet—that the court must accept as true all of the allegations contained in the complaint—is "inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Further, the court is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the

pleader is entitled to relief as required by Rule 8. *Id.* at 679.

Additionally, complaints alleging fraud must also comply with Rule 9(b), which requires stating "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). To plead fraud with particularity, the alleging party must include the who, what, when, where, and how of the misconduct charged. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). But "in alleging fraud . . . conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Because Rule 8 requires the pleading of a plausible claim, "claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso*, 637 F.3d at 1047.

**B. False Claims Act**

The FCA attaches liability not to underlying fraudulent activity, but to the claim for payment submitted to the government. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Plaintiff asserts a false certification claim under 31 U.S.C. § 3729(a)(1)(A). (Doc. 53 at 19.) The four elements of a false certification claim are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *Ebeid*, 616 F.3d at 997. Defendant argues the SAC (1) does not plausibly allege that Defendant acted with scienter, and (2) does not allege with particularity that Defendant *submitted* false claims. (Doc. 56-1 at 6.)

     **1. Scienter**

The FCA "imposes liability on anyone who 'knowingly' submits a 'false' claim to the Government." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 742 (2023). The FCA defines the term "knowingly" as encompassing three mental states: (1) actual knowledge, (2) deliberate ignorance, and (3) reckless disregard. *Id.* at 749–50 (citing 31 U.S.C. § 3729(b)(1)(A)). "Actual knowledge" means the defendant is aware of submitting a false claim; "deliberate ignorance" means the defendant is aware of a substantial risk

their statements are false, but intentionally avoids taking steps to confirm the statement's truth or falsity; and "reckless disregard" means the defendant is "conscious of a substantial and unjustifiable risk that their claims are false, but submit[s] the claims anyway." *Id.* at 751. The focus is "on what the defendant knew when presenting the claim." *Id.* at 752.

Plaintiff may establish scienter by showing that Defendant: (1) actually knew radiology readings performed on non-diagnostic monitors were not "reasonable and necessary" under the general Medicare statute, i.e., did not meet minimum efficacy standards; (2) was aware of a substantial risk that the use of non-diagnostic monitors fell below minimum efficacy standards and intentionally avoided learning whether it did; or (3) was aware of a substantial and unjustifiable risk such readings fell below minimum efficacy standards, but submitted claims for those readings anyway. *See id.* at 757; *Stenson*, 2024 WL 1826427, at *3. The facial ambiguity of the phrase "reasonable and necessary" does not by itself preclude a finding of scienter under the FCA. *Schutte*, 598 U.S. at 754.

Defendant argues that the SAC fails to plausibly plead scienter because it does not contain any allegations regarding the mindset of any of Defendant's radiologists or employees who submitted allegedly false claims, and the allegations relevant to scienter that the SAC does contain are conclusory and lack supporting factual allegations. (Doc. 56-1 at 13–16.) Defendant frames Plaintiff's theory of scienter as having three primary components: (1) Defendant's representatives attended radiology conferences where legally cleared and efficacious technologies were prominently marketed; (2) Defendant's IT Director knew that nearly all radiological practices in the United States use medical grade monitors; and (3) it is common knowledge in the medical industry that it is medically inappropriate to interpret diagnostic images on monitors that have not been approved by the FDA. (*Id.* at 13–14.)

Taking the SAC's allegations as true and viewing them in the light most favorable to Plaintiff, the SAC sufficiently pleads that Defendant was aware of a substantial and unjustifiable risk that diagnostic readings performed on the consumer grade monitors fell below minimum efficacy standards but submitted claims for those readings anyway. "CMS

- 5 -

guidance makes clear that safety and efficacy determinations are based on 'authoritative evidence' or 'general[] accept[ance] in the medical community.'" *Stenson*, 2024 WL 1826427, at *8 (quoting *Dan Abrams Co. v. Medtronic Inc.*, 850 F. App'x 508, 509 (9th Cir. 2021)). If the monitors used by Defendant "were not generally recognized by the medical community as effective for primary diagnostic read[ing]s," then it is plausible that Defendant, a large and sophisticated radiology practice, was aware of a substantial and unjustifiable risk that using the monitors for that purpose fell below minimum efficacy standards. (Doc. 53 ¶ 62.) As discussed above, and contrary to Defendant's repeated assertions, (*see* Doc. 56-1 at 13; Doc. 62 at 10–11), Plaintiff does not need to allege that Defendant *knew* it was using monitors that fell below minimum efficacy standards. *Schutte*, 598 U.S. at 751–52.

The SAC contains allegations that support the inference that the monitors were not generally recognized by the medical community as effective for primary diagnostic readings. The SAC, like the FAC, specifically alleges the monitors used by Defendant are far less technologically sophisticated than those typically used by radiologists. (*See* Doc. 53 ¶¶ 50–59.) The SAC alleges that the manufacturer, Dell, did not endorse the monitors used by Defendant for medical use; the FDA cleared those monitors only if used with PerfectLum software, which Defendant did not use; Dell markets different monitors for medical use; Defendant and its representatives attended industry-wide conferences where efficacious technologies were prominently marketed; and Defendant's IT Director led industry-wide technology initiatives and knew nearly all radiology practices in the United States did not use unmodified consumer grade monitors. (*Id.* ¶¶ 63–68.) Additionally, the SAC alleges that medical grade monitors cost thousands of dollars, while non-diagnostic monitors cost only hundreds, and that these costs are incorporated into Medicare billing codes, which Defendant used to bill Medicare for diagnostic readings. (*Id.* ¶¶ 58, 73–79.) Taken together, these allegations allow the Court to draw a reasonable inference that Defendant acted with awareness of a substantial and unjustifiable risk that using the monitors for diagnostic purposes fell below minimum efficacy standards

Defendant argues that Plaintiff does not provide facts showing that its personnel who attended radiology conferences learned the monitors Defendant used were insufficient for radiological purposes and even if diagnostic-grade monitors were marketed at those conferences, "that says nothing about the sufficiency of the monitors used by Radiology Ltd. physicians." (Doc. 56-1 at 13.) Plaintiff need not show that by attending industry-wide conferences Defendant's personnel, in fact, learned its monitors were technologically insufficient for diagnostic radiology readings. Attending conferences where diagnostic-grade monitors were marketed is one factor supporting an inference that Defendant was aware of a substantial and unjustifiable risk that the monitors it used fell below minimum efficacy standards. The SAC contains detailed allegations about the technological insufficiency of Defendant's monitors elsewhere. (Doc. 53 ¶¶ 50–59.)

Defendant argues that Plaintiff's allegation that its IT Director knew nearly all radiological practices used medical grade monitors and rejected the use of unmodified consumer grade monitors is unsupported speculation. (Doc. 56-1 at 13–14.) But the SAC also alleges that the IT Director led industry-wide technology initiatives, which is supported by the allegation that Plaintiff's employer "was informally collaborating with Rad Ltd regarding overlapping technology initiatives." (Doc. 53 ¶¶ 68, 84.) This supports an inference that the IT Director had awareness of the types of monitors that are and are not generally accepted in the medical community.

Defendant states that Plaintiff "continues to rely on the FDA's non-approval as the basis for his claims" and that the SAC nakedly asserts that it is common knowledge in the medical industry that it is medically inappropriate to interpret diagnostic images on a non-FDA-approved monitor. (Doc. 56-1 at 10, 14; *see* Doc. 53 ¶ 67.) But the SAC's allegations that the monitors used by Defendant are not FDA-approved medical devices are relevant to the scienter element insofar as they support Plaintiff's theory that "medical practitioners in the field of radiology look to FDA-cleared or FDA-approved medical grade devices as the baseline standard for safe and effective practice." (Doc. 53 ¶¶ 33–47.) FDA-approval is one of many factors that tends to show whether a technology is generally recognized as

effective by the medical community.

Defendant cites *Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64 (9th Cir. 2020) and *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) to support its argument that the SAC fails to plausibly plead scienter. (Doc. 56-1 at 15–16; Doc. 62 at 11–12.) *Adomitis* is an unpublished disposition and is not precedent. *See* 9th Cir. R. 36-3. In any event, the four-page disposition does not detail the allegations upon which the court based its holding, which prevents this Court from comparing the "vague and conclusory" allegations pleaded in that case to the allegations in the SAC. *Adomitis*, 816 F. App'x at 67. And, in *Hendow*, while the court did state that "a palpably false statement, known to be a lie when it is made, is required for a party to be found liable under" the FCA, 461 F.3d at 1172, more recent Supreme Court cases affirm that "knowingly" includes the mental states of deliberate ignorance of and reckless disregard for the truth, *Schutte*, 598 U.S. at 751; *Escobar*, 579 U.S. at 182. The relators in *Hendow* alleged a particularly egregious example of deliberately fraudulent behavior; that does not mean allegations in other cases must always rise to that same level. *See* 461 F.3d at 1169–70.

Additionally, Defendant argues that Plaintiff's knowledge about Defendant and its practice derives exclusively from an email exchange with Defendant's IT Director that contradicts his theory of scienter, and that Defendant is aware of evidence and has asserted allegations in a different lawsuit that also contradict his theory of scienter. (Doc. 56-1 at 16–18.)

When deciding a motion under Rule 12(b)(6) a court may only consider allegations contained in the pleadings, exhibits attached to the complaint, documents incorporated by reference in the complaint, and matters properly subject to judicial notice. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Otherwise, consideration of matters outside the pleadings converts the motion to dismiss into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Even if a document is not physically attached to a complaint, "it may be incorporated by reference

into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

Plaintiff attached email correspondence with Defendant's Director of IT as Exhibit 4 to his original complaint. (Doc. 1-4.) In deciding Defendant's motion to dismiss the FAC, the Court considered the full text of the email chain without converting the motion to dismiss into a motion for summary judgment because the "FAC extensively references and relies on the correspondence as the basis for Plaintiff's allegation that Defendant uses particular types of monitors for radiology readings." (Doc. 43 at 4–6) (citing Doc. 25 ¶¶ 2, 8, 53, 57, 61, 65, 68–69, 73–74.) Likewise, the SAC references and relies on the correspondence as a basis for Plaintiff's claim. (*See* Doc. 53 ¶¶ 2, 12, 60, 62–65, 68–70, 83–84.) Therefore, the Court will consider the full text of the email chain, incorporated by reference in the SAC. (*See* Doc. 33-5, Ex. A.)

Defendant's statement that the email chain is Plaintiff's only source of knowledge about Defendant's practice is refuted by the email chain. (*Id.* at 2) ("It was great seeing you in Tucson and thank you for the awesome site tour!). The IT Director's statements that Defendant urges the Court to consider, e.g., that Defendant uses a type of monitor that has not led to a misdiagnosis in 15 years, do not nullify the SAC's plausible allegations of scienter. (*See* Doc. 56-1 at 16); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

Finally, Defendant asks the Court to take judicial notice of the First Amended Complaint filed in *United States ex rel. Stenson v. LG Elecs. USA, Inc.*, No. 2:19-cv-05441-JMY (E.D. Pa. Feb. 12, 2020) ("the Pennsylvania Qui Tam"). (*See* Doc. 56-4.) Defendant argues that Plaintiff has asserted allegations in the Pennsylvania Qui Tam that contradict his theory of scienter. (*See* Doc. 56-1 at 16–18.) However, the alleged contradictory allegations present factual issues that "have no bearing on the legal sufficiency of the allegations [in the SAC] under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). For the foregoing reasons, the Court concludes the SAC plausibly

alleges scienter at the motion to dismiss stage, regardless of the email correspondence or the allegations made in the Pennsylvania Qui Tam.

### 2. Submission of False Claims

Defendant argues the SAC fails to plead the submission of a false claim with the level of particularity required by Rule 9(b). (Doc. 56-1 at 14–17.) Defendant acknowledges that the court of appeals held that Plaintiff sufficiently alleged a viable legal theory of falsity, (Doc. 62 at 15),[4] but challenges the sufficiency of the SAC's allegations that Defendant *submitted* claims to CMS. This argument is unpersuasive.

The court of appeals held that Plaintiff "sufficiently pleaded that [Defendant] falsely certifies its compliance with the general Medicare statute *by submitting claims* for diagnostic readings conducted on the Dell Monitors." *Stenson*, 2024 WL 1826427, at *4 (emphasis added). But even if this statement was meant only to address *the falsity* of potentially submitted claims, this Court finds that the SAC sufficiently pleads the submission of false claims. "[A] relator is not required to identify actual examples of submitted false claims; instead, 'it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th

---

[4] In analyzing the element of falsity in the FAC, the Ninth Circuit held "[Plaintiff]'s 'reasonable and necessary' theory . . . meets the particularity requirement under Rules 9(b) and 8(a)." *Stenson*, 2024 WL 1826427, at *3. The court reasoned that the FAC's "general argument that radiologists can detect cancer in images displayed on diagnostic-grade monitors but cannot detect cancer when the same images are displayed on lower-grade displays . . . is supported by sufficiently credible physician testimony, and, thus, gives rise to a reasonable inference that the technological quality of radiologists' monitors has some bearing on the efficacy of their diagnostic readings." *Id.* The court found the FAC supported these allegations with sufficient particularity because (1) it points to "minutes from an Arizona Medical Board meeting where a Radiology Limited physician was issued an advisory warning for failing to identify a 6mm mass in a patient's kidney"; and (2) it "notes that Dell does not market the [m]onitors [Defendant uses] for diagnostic use, nor does it endorse their use in medical settings unless they are equipped with PerfectLum software, which [Defendant] does not use." *Id.* at *4. The court stated that "[d]iscovery might produce additional evidence of improper diagnoses" and "experts might testify to the [non-diagnostic monitors'] efficacy or conduct testing to establish that the [monitors] do not safely, effectively, or appropriately diagnose diseases." *Id.* The SAC includes the same allegations relied upon by the appeals court, and it remains true that discovery may reveal additional evidence of improper diagnoses and the efficacy of non-diagnostic monitors. (Doc. 53 ¶¶ 63–65, 70.) Therefore, like the FAC, the SAC sufficiently pleads falsity.

Cir. 2019) (quoting *Ebeid*, 616 F.3d at 998–99). The SAC alleges particular details of a scheme to submit false claims. The SAC details how the Dell Monitors used by Defendant for radiology readings are inferior to diagnostic, medical grade monitors. (*See* Doc. 53 ¶¶ 50–59; Doc. 59 at 16.) The SAC alleges, "[Defendant] and its physicians signed provider agreements with Medicare permitting them to submit claims and accept payment for services"; Medicare pays only for services that are reasonable and necessary; "from July 1, 2013 through 2021, [Defendant] used non-diagnostic monitors for primary diagnostic radiological readings in human subjects"; Defendant "has submitted claims to CMS under the guise of having used medically appropriate equipment"; and, in 2016, "CMS paid [Defendant] $6,646,850.54 for diagnostic readings." (Doc. 53 ¶¶ 17, 24, 62, 71, 82.) The SAC alleges, "All of these payments represent false claims because none of the underlying readings used equipment that met accepted standards of medical practice." (*Id.* ¶ 82.) The SAC points to 2016 claims data as representative examples of payments from CMS to Defendant. (*Id.* ¶ 17; Doc. 1-3.) These allegations provide reliable indicia from which it could be inferred that Defendant submitted false claims to CMS. The fact that Plaintiff's allegations are broad, and apply to claims Defendant submitted to CMS for *all* non-mammography diagnostic readings performed on the consumer grade monitors, does not necessarily render the allegations non-particular. Defendant has notice of the particular misconduct alleged to constitute the fraud charged. *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052–53 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).

Defendant's reliance on *Ebeid* to support its argument that the SAC fails to plead the submission of false claims with particularity is misplaced. (*See* Doc. 56-1 at 19–20.) In *Ebeid*, the relator, proceeding under a theory of implied false certification,[5] alleged that the defendant, a woman in charge of three health care businesses—a clinic, a home healthcare provider, and a hospice, submitted Medicare claims in violation of the Arizona common

---

[5] Unlike *Ebeid*, here the SAC implicates both express false certification and implied false certification. *See Stenson*, 2024 WL 1826427, at *2.

- 11 -

law prohibition on the corporate practice of medicine,[6] the Stark Act, and certain Medicare regulations. 616 F.3d at 999. The relator alleged that the clinic's physicians referred patients to the home healthcare provider and hospice and the defendant concealed the physician's financial relationship with those entities, in violation of the Stark Act and Medicare regulations' prohibition on physician referrals to entities in which the physician has a financial interest. *Id.* at 1000–01. The court held these allegations to be insufficiently particular under Rule 9(b) because relator provided no details or facts about the financial relationships or alleged referrals. *Id.* Although the court mentioned that the complaint did not "supply reasonable indicia that false claims were actually submitted," *id.* at 999, the court did not analyze whether the complaint sufficiently pleaded the *submission* of false claims with particularity, *see id.* at 999–1001.

Here, as discussed above, the SAC alleges that: Defendant and its physicians participate in the Medicare program; Defendant and its physicians submitted Medicare claims for radiology readings performed on non-diagnostic monitors; the non-diagnostic monitors fell below minimum efficacy standards; and CMS paid Defendant over $6.6 million in 2016 alone for non-mammography diagnostic readings. (Doc. 53 ¶¶ 17–18, 50–59, 62, 82.) Plaintiff provides a 35-page list of claims submitted to CMS for radiological readings Defendant's physicians performed on non-diagnostic, consumer grade monitors. (Doc. 1-3.) Therefore, unlike the allegations in *Ebeid* that amounted to a "global indictment of [Defendant]'s business," the SAC's allegations provide, with sufficient particularity, reliable indicia that alleged false claims were actually submitted. 616 F.3d at 1000–01.

### 3. Law of the Case Doctrine

Plaintiff argues the court of appeals rejected Defendant's same challenges to the SAC and therefore those challenges are barred by the law of the case doctrine. (Doc. 59 at 5.) The law of the case doctrine generally precludes a court from reconsidering an issue

---

[6] The court held the corporate practice of medicine allegation was insufficient under Rule 9(b) because it did not "refer to any statute, rule, regulation, or contract that conditions payment on compliance with state law governing the corporate practice of medicine." *Ebeid*, 616 F.3d at 1000. By contrast, here, the SAC refers to the general Medicare statute's reasonable and necessary requirement as a condition of payment.

- 12 -

previously decided by a higher court in the identical case. *See United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014). Defendant asserts that the doctrine is not applicable because, although the court of appeals concluded that Plaintiff's FAC stated a claim under the FCA, the court addressed only the elements of falsity and materiality. (Doc. 62 at 7); *see United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (noting that the issue in question must have been "actually considered and decided by the first court" for the doctrine to apply).

The Court does not decide whether the law of the case doctrine applies. Because the Court has concluded that the SAC sufficiently alleges scienter and the "submission" of false claims, the SAC survives Defendant's challenges even if Defendant is correct that the doctrine does not apply.

## CONCLUSION

Plaintiff's SAC (Doc. 53) plausibly pleads scienter and pleads the submission of false claims with sufficient particularity. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 56) is **denied.**

2. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant must file an answer to Plaintiff's Second Amended Complaint within **14 days** of the date of this Order.

Dated this 13th day of January, 2025.

Jennifer G. Zipps
Chief United States District Judge