**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, *ex rel.* Eric James Stenson,<br><br>            Plaintiff-Relator,<br><br>v.<br><br>Radiology Ltd, LLC,<br><br>            Defendant. | No. CV-19-00306-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is Plaintiff-Relator's Motion to Compel Discovery. (Doc. 101.) The Motion is fully briefed. (*See* Docs. 107, 110.)[1] For the following reasons, the Court will grant Relator's Motion to Compel.

## I.    Background

### A. Underlying Litigation

On June 7, 2019, Plaintiff-Relator Eric James Stenson ("Relator") filed this action under seal pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). (Doc. 1.)[2] The United States declined to intervene, reserving its right to intervene at a later date for good cause. (*See* Doc. 19.) On August 24, 2021, the Court

---

[1] The Court finds that oral argument would not aid its decision on this matter. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

[2] The qui tam provisions allow private individuals, or relators, to bring an FCA "action 'for the person and for the United States Government' against an alleged false claimant, 'in the name of the Government.'" *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769–70 (2000) (quoting 31 U.S.C. § 3730(b)(1)). If the United States declines to intervene, the relator retains the exclusive right to conduct the action and can receive a share of any proceeds from the action. *Id.* (citing 31 U.S.C. §§ 3730(b)–(d)).

unsealed the action. (Doc. 20.) In his First Amended Complaint ("FAC"), Relator asserted five FCA claims all arising from Defendant's alleged unlawful use of "non-diagnostic" computer monitors to interpret radiology images. (*See* Doc. 25.) Relator withdrew one claim, and the Court granted Defendant's motion to dismiss the remaining claims, concluding Relator failed to sufficiently plead two of the four elements necessary to prove an FCA claim: falsity and materiality. (*See* Doc. 38 at 15; Doc. 43.)[3] The Court denied leave to amend, finding Relator's "action turns on the incorrect legal conclusion that radiologists must use a particular type of monitor to read general radiological images," and thus, amendment would be futile. (Doc. 43 at 12.)

On May 20, 2024, the Ninth Circuit Court of Appeals reversed the dismissal in part and remanded for further proceedings. The court held that Relator had sufficiently pleaded the elements of falsity and materiality, but only as to Relator's claim that Defendant violated the general Medicare statute's requirement that claimed services be reasonable and necessary. *United States ex rel. Stenson v. Radiology Ltd., LLC*, No. 22-16571, 2024 WL 1826427, at *2–3 (9th Cir. Apr. 26, 2024).[4] The court instructed this Court to "grant Stenson leave to amend the FAC to the extent that he wishes to proceed on grounds other than an FDA-approval theory." *Id.* at *5.

On June 28, 2024, Relator filed his Second Amended Complaint ("SAC"). (Doc. 53.) The SAC asserts the single FCA claim recognized by the court of appeals—that Defendant knowingly presented, or caused to be presented, false claims for medically unreasonable or unnecessary services under 31 U.S.C. § 3729(a)(1)(A). (*Id.* at 19–21.) Defendant moved to dismiss the SAC because it "does not plead plausible facts that Radiology Ltd. acted with scienter, nor does it allege with particularity the submission of false claims." (Doc. 56-1 at 6.) On January 14, 2025, the Court denied Defendant's second motion to dismiss. (Doc. 63.) Defendant answered the SAC, and the Court issued a Scheduling Order which set July 24, 2026 as the deadline for the completion of all

---

[3]   Record citations refer to the page numbers generated by the Court's CM/ECF filing system.
[4]   The Ninth Circuit's memorandum opinion is also found on the docket at (Doc. 50-1).

discovery. (Docs. 64, 69, 70.) On March 14, 2025, Defendant filed a motion for judgment on the pleadings on constitutional grounds, which the Court denied. (Docs. 71, 90.) Thereafter, the parties exchanged initial disclosures, and discovery commenced. (*See* Docs. 93, 94.)

### B. Discovery Dispute

In the pending discovery dispute, Relator challenges Defendant's responses to Relator's written discovery requests. On August 25, 2025, Relator served Defendant with his First Set of Requests for Production and First Set of Non-Uniform Interrogatories. (Doc. 103 ¶ 3.) On October 10, 2025, Relator served his Second Set of Requests for Production and Second Set of Non-Uniform Interrogatories. (*Id.* ¶ 4.) On October 25, 2025, Defendant served initial Responses and Objections to Relator's First Set of Requests for Production and First Set of Non-Uniform Interrogatories. (*Id.* ¶ 5; *see* Doc. 103-1 at 3–87.) Defendant raised several general objections applicable to all of Relator's Requests for Production ("RFPs") and Interrogatories, including that the discovery requests are overbroad, disproportionate, unduly burdensome, and irrelevant, (Doc. 103-1 at 6–8, 52–54),[5] and various objections to each individual RFP and Interrogatory. Defendant also responded it *would* "agree to meet-and-confer with Relator to discuss the scope of th[e] [RFPs and Interrogatories] and a reasonable approach to collecting and producing relevant, responsive documents to the extent any exist." (*See, e.g.*, Doc. 103-1 at 11, 59.)

On November 12, 2025, Relator sent defense counsel a letter identifying deficiencies in Defendant's responses. (*Id.* at 96–104.) The parties conferred and resolved two of Defendant's objections regarding temporal scope and discovery related to mammography readings. (Doc. 102 at 5; Doc. 103 ¶¶ 10–11; Doc. 103-1 at 106–07.) In a December 19, 2025 letter, Defendant maintained its other objections, stating "Relator's requests broadly seek discovery that are unrelated to Relator's alleged theory of liability," attached a declaration of an official at the Centers for Medicare and Medicaid Services

---

[5] Defendant also asserts blanket objections to the extent the discovery requests seek documents or information in the possession of other entities, confidential, proprietary, or privileged information, and information not kept in the ordinary course of business. (Doc. 103-1 at 6–8, 52–54.)

("CMS"), and indicated it was finalizing supplemental responses to Relator's discovery requests. (Doc. 103-1 at 107–08; *see also id.* at 109–11.) Relator avers that despite extensive meet-and-confer efforts, the parties are at an impasse on multiple discovery issues, including Defendant's refusal to provide compliant amended responses and ongoing failure to produce documents. (Doc. 103 ¶ 14.)

Defendant disagrees with Relator's summation of the parties' discovery efforts, stating it is "incomplete and misleading." (Doc. 108 at 4.) Defendant challenges Relator's allegations that "Rad Ltd.'s initial discovery responses failed to 'provide[] substantive responses,' failed to provide sufficient detail about withheld or responsive materials, and 'resulted in no documents produced'—stating instead that Rad Ltd. 'would "meet and confer" regarding scope and a "reasonable approach" to collection and production.'" (*Id.*) Defendant suggests that "the need to meet and confer about a reasonable approach to collection and production of responsive materials was a product of the 52 facially overbroad discovery requests [Relator] served, which seek extensive discovery unrelated to the allegations in his complaint." (*Id.*) Defendant asserts that it had stated it would serve supplemental discovery responses and most of the deficiencies Relator alleges have now been resolved by Defendant's supplemental responses. (*Id.* at 4–6.)

On January 9, 2026, the Court held a telephonic conference to discuss the parties' discovery dispute and set a schedule for briefing Relator's Motion to Compel. (Doc. 100.) On the evening of January 20, 2026, two business days before the Motion deadline, Defendant served Supplemental Objections and Responses to Relator's First Set of Requests for Production and First Set of Non-Uniform Interrogatories, (Doc. 103-1 at 182–277), and Objections and Responses to Relator's Second Set of Requests for Production and Second Set of Non-Uniform Interrogatories, (Doc. 103-1 at 278–92). On January 22, 2026, the evening before the Motion deadline, Defendant served a small document production. (Doc. 101 at 2 n.2.)

In the pending Motion to Compel, Relator identifies four overlapping categories of disputed discovery: "(i) workstation hardware and configuration, including calibration,

quality assurance, and related operational controls; (ii) Rad Ltd's internal knowledge and communications concerning selection, implementation, and risks; (iii) claims and reimbursement information bearing on scope and damages; and (iv) government interactions and external representations bearing on materiality and scienter." (Doc. 101 at 7.) Relator asserts Defendant's responses are deficient because: (i) Defendant fails to identify and produce business records while invoking Rule 33(d); (ii) Defendant's "meet-and-confer" responses fail to state whether Defendant would produce documents or if materials were being withheld; (iii) Defendant's merits-based objections improperly mischaracterize Relator's theory of liability, assuming Defendant was required to use FDA-cleared equipment; (iv) Defendant improperly objects that standard terms like "FDA-cleared" and "FDA-approved" are vague and ambiguous; and (v) Defendant fails to produce non-privileged information and identify any information withheld on the basis of privilege or confidentiality. (*Id.* at 13–16.)

Defendant asserts that "most of the deficiencies Relator alleges have now been resolved by [Defendant]'s supplemental responses." (Doc. 108 at 5–6.) Defendant states that the primary issue in the discovery dispute is Relator's attempt to obtain evidence unrelated to the central theory of the SAC, which Defendant characterizes as Defendant's use of consumer-grade monitors that can "***never*** qualify for Medicare reimbursement because they are ***never*** 'reasonable and necessary.'" (*Id.* at 6.) Thus, according to Defendant, any information beyond the monitor model type and specifications—including workstation calibration, configuration, maintenance, cleaning, software updates, quality control testing, training procedures, diagnostic checks, holistic performance monitoring, quality assurance, graphic cards, reading environment, computer processing units, peripherals, operating systems, image-processing software, and other software or hardware—is irrelevant and exceeds the permissible scope of discovery. (*Id.* at 7.)

Relator asserts that Defendant's supplemental responses and limited document production failed to cure deficiencies in Defendant's initial responses, and that Defendant continues to withhold core information, fails to specify what Defendant is withholding, and

improperly reserves Defendant's ability to produce materials at some undefined future time. (Doc. 110 at 2.)

## II.    Legal Standard

"[P]retrial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The scope of allowable discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible to be relevant.

Fed. R. Civ. P. 26(b)(1). The operative "complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000); *see also In re German Auto. Mfrs. Antitrust Litig.*, 335 F.R.D. 407, 408–09 (N.D. Cal. 2020) (explaining that courts "cannot grant discovery based on a complaint that has already been dismissed"). But discovery is not limited to the issues raised in the pleadings because discovery itself is designed to narrow, define, and clarify the issues in the case. *See Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

As relevant here, a party may serve interrogatories and requests for production of documents within the scope of Rule 26(b). *See* Fed. R. Civ. P. 33(a)(2), 34(a). If the responding party believes a request is outside the scope of Rule 26(b) or otherwise improper, it may object in lieu of answering or producing documents. *See* Fed. R. Civ. P. 33(b)(3)–(4), 34(b)(2)(C). Correspondingly, a party seeking discovery may move for an order compelling an answer or production if "a party fails to answer an interrogatory submitted under Rule 33; or . . . to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). "[A]n evasive or incomplete disclosure, answer, or

response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The party seeking to compel discovery has the initial burden of establishing that the discovery sought is relevant. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). This "is a relatively low bar." *Id*. (quoting *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020)). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, or supporting its objections." *Hipschman v. County of San Diego*, 738 F. Supp. 3d 1332, 1337 (S.D. Cal. 2024) (citation omitted). Boilerplate objections are not sufficient. *See Jane Doe 130 v. Archdiocese of Portland in Or.*, 717 F. Supp. 2d 1120, 1126 (D. Or. 2010) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *cf. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege").

### III. Discussion

#### A. Scope of Discovery & Defendant's Relevance Objection

##### 1. False Claims Act & Medicare's "Reasonable and Necessary" Requirement

As noted above, Count I of the SAC, the only remaining claim in this action, alleges that Defendant knowingly presented, or caused to be presented, false claims for medically unreasonable or unnecessary services under 31 U.S.C. § 3729(a)(1)(A). (Doc. 53 ¶¶ 88–101.) The FCA attaches liability not to underlying fraudulent activity, but to the claim for payment submitted to the government. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). "The FCA was 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *Stenson*, 2024 WL 1826427, at *2 (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)). "A successful FCA claim 'requires: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or

forfeit moneys due.'" *Id.* (quoting *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018)).

Materiality is a demanding standard that looks to the effect of the alleged misrepresentation on the behavior of the recipient. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193–94 (2016); *see also* 31 U.S.C. § 3729(b)(4) ("[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."). For a false statement to be material, the statutory, regulatory, or contractual violations must be so central to the claims that the government would not have paid the claims had it known of the violations. *See Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1121 (9th Cir. 2020)

Regarding scienter, the FCA "imposes liability on anyone who 'knowingly' submits a 'false' claim to the Government." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 742 (2023). The FCA defines the term "knowingly" as encompassing three mental states: (1) actual knowledge, (2) deliberate ignorance, and (3) recklessness. *Id.* at 749–50 (citing 31 U.S.C. § 3729(b)(1)(A)).

As explained by the court of appeals:

> CMS regulations require that all reimbursed services be "reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A). And, in this Circuit, "a false certification of medical necessity can give rise to FCA liability." *Winter*, 953 F.3d at 1118. Medicare contractors determine whether services are reasonable and necessary by assessing whether the service is "(1) safe and effective; (2) not experimental or investigational, ... and (3) appropriate." *See* Centers for Medicare & Medicaid Services, Medicare Program Integrity Manual § 13.5.1 (2015) (cleaned up) (describing protocols for local coverage determinations); *see also id.* § 13.3 (incorporating § 13.5.1's standards for individual claim determinations).

> Even if no federal rule, regulation, or law requires radiologists to use FDA-approved devices outside of the mammography context, the general Medicare statute nevertheless requires all physicians to provide services that meet minimum efficacy standards. . . .

> "CMS guidance makes clear that safety and efficacy determinations are based on 'authoritative evidence' or 'general[] accept[ance] in the medical community.'" *Dan Abrams Co. LLC v. Medtronic Inc.*, 850 Fed. Appx. 508, 509 (9th Cir. 2021).

*Stenson*, 2024 WL 1826427, at *3 (alterations in original). Mere violations of the

"reasonable and necessary" requirement are not necessarily material under the FCA; the Court "must also consider CMS's actual or likely response to [Defendant]'s claims for diagnostic readings had it known the readings were conducted on the Dell Monitors." *Id.* at *4.

### 2. Complaint

In the SAC, Relator summarizes his allegations as follows:

> In a nutshell, Rad Ltd cut corners by using inferior, consumer grade displays to perform diagnostic readings instead of using FDA-approved medical grade displays. The displays Rad Ltd used were not adequate to ensure accurate diagnoses, and their use deviated substantially from accepted standards of medical practice.

> Even though Rad Ltd's physicians used ineffective equipment, and even though Rad Ltd knew that the equipment was not medical grade, the physicians billed the government as if they had used compliant, medical grade displays. These claims for reimbursement were false. That is because, as the Ninth Circuit recognized in this case, "the general Medicare statute … requires all physicians to provide services that meet minimum efficacy standards." *See United States ex rel. Stenson v. Radiology Ltd., LLC*, No. 22-16571, 2024 WL 1826427, at *3 (9th Cir. Apr. 26, 2024). This is known as the "reasonable and necessary" requirement—and services provided using unapproved, inferior equipment violate it. By knowingly billing Medicare for services that were not reasonable and necessary (or causing its physicians to do so), Rad Ltd violated the FCA.

(Doc. 53 ¶¶ 2–3.) The SAC describes standards for medical grade diagnostic monitors and differences between medical grade and consumer grade monitors. (*See id.* ¶¶ 33–59.)

As Class II medical devices, primary diagnostic displays for use in radiology image interpretation are subject to FDA premarket clearance and special controls to govern safe and effective use. (*Id.* ¶¶ 33–34, 39.) When seeking FDA-clearance, the manufacturer of a primary radiological diagnostic imaging device must submit information establishing compliance with special controls, including "firmware and software for software functionalities like display controls; ambient light sensing; luminance calibration tools; and quality-control software." (*Id.* ¶¶ 36, 41.) The FDA requires these devices' user manuals to include information like "hardware/software compatibility requirements, conformity with voluntary consensus standards, performance specifications, calibration procedures, and a full description of recommended quality assurance testing." (*Id.* ¶ 45.) Relator alleges "medical practitioners in the field of radiology look to FDA-cleared or FDA-approved

medical grade devices as the baseline standard for safe and effective practice." (*Id.* ¶ 47.)

Relator alleges the "use of non-diagnostic consumer grade monitors to perform primary radiological diagnostic readings is not recognized in the medical community as safe or effective. Those devices cannot meet minimum efficacy standards without substantial modifications or when used with specific software packages." (*Id.* ¶ 48.) Relator alleges non-diagnostic monitors: (a) fail to meet recommended values for specifications like screen size, resolution, brightness, grayscale contrast, and connectivity options to the master workstation; (b) "struggle to reveal critical anatomical information, partly because the display will have luminescence limitations that are also impacted by performance of other systems like the graphics card"; (c) "may not have the required dynamic range of brightness. . . . even if the monitor is calibrated"; (d) may produce variable outputs and lack automatic calibration systems; and (e) have a shorter lifespan than medical grade monitors and require more consistent maintenance and evaluation. (*Id.* ¶¶ 50–56.)

Relator alleges Defendant "was aware of the distinction between medical grade displays and non-diagnostic consumer grade systems. . . . understood the limitations of non-diagnostic systems, but still elected to use [non-diagnostic] inferior equipment to improve profits." (*Id.* ¶ 60.) Defendant used non-diagnostic monitors manufactured by Dell Inc., including Dell model UP3017, and Dell had not introduced nor endorsed those monitors for use in diagnostic imaging. (*Id.* ¶ 63.) The FDA cleared the use of Dell UP3017 monitors only when used with an FDA-cleared software called PerfectLum, which Defendant did not use. (*Id.* ¶ 64.) Relator alleges Defendant knew use of Dell UP3017 monitors "without the PerfectLum software was medically improper because, in part, the hardware could not be calibrated or regulated for reliable use in primary radiological diagnostics." (*Id.* ¶ 65.) Relator alleges the Dell monitors "should not have been used for human diagnostic readings given the unacceptably high risk of errors, omissions, and misdiagnosis." (*Id.* ¶ 66.)

Relator alleges reimbursement amounts for Medicare billing codes that include a technical component are based in part on the cost of equipment and assume the use of

medical grade diagnostic displays, reflecting "the common understanding within [the] industry that radiologists must use . . . medical grade components to deliver safe and reliable radiological services." (*Id.* ¶¶ 71–79.) Thus, "[b]y submitting claims for radiology services performed on inferior, consumer grade equipment, Rad Ltd defrauded the United States and received payment for services that were not furnished in accordance with accepted standards of medical practice." (*Id.* ¶ 80.)

As Director of Information Technology for a medical imaging services provider, Relator learned of Defendant's use of non-diagnostic monitors through his employment. (*Id.* ¶¶ 7–12, 83–84.) Relator corresponded with Defendant's IT Director regarding technology-related initiatives for their radiology practices. (*Id.* ¶ 83.) "After learning that Defendant used non-diagnostic monitors, . . . Relator sought more information on Rad Ltd's technology ecosystem and configuration. . . . to discern whether Rad Ltd had reached an economically viable solution for use of consumer grade displays while meeting appropriate standards for radiological technology." (*Id.*)

### 3. Analysis

In general, the Court resolves Defendant's relevance objections in favor of Relator.[6] Defendant's objections rely on a fundamental mischaracterization of Relator's complaint and legal claim and an overly limited view of the rules governing discovery procedure. Contrary to Defendant's argument, Relator's central theory of liability is not that Defendant used monitors that can *never* qualify for Medicare reimbursement because the monitors themselves are per se improper for use in human diagnostic radiological imaging. Rather, Relator's complaint alleges:

> Radiology diagnostic services are inextricably intertwined with the quality and efficacy of the technology platform used by a radiologist to interpret medical imaging. . . . A radiologist can provide effective service only if the diagnostic workstation produces an image that is consistently capable of accurate interpretation. Because Rad Ltd used technology that hindered or obstructed the clear interpretation of complex radiological readings, Rad Ltd failed to provide medical services that were "reasonable" under the Medicare statutory scheme. When Rad Ltd physicians conducted diagnostic readings on non-diagnostic monitors, they failed to provide covered services.

---

[6] The Court addresses challenges to specific discovery requests *infra* Section III.C.

(Doc. 53 ¶ 94.) Because "the general Medicare statute . . . requires all physicians to provide services that meet minimum efficacy standards," the key question is whether diagnostic readings performed on less sophisticated, non-FDA cleared monitors fall below that minimum standard of care. *See Stenson*, 2024 WL 1826427, at *3. Monitors are central to Relator's theory, and Relator first learned of the alleged fraudulent scheme when he discovered Defendant was using consumer grade Dell monitors. However, liability hinges on the efficacy of the readings performed on the monitors, as determined by authoritative evidence or general acceptance in the medical community, not on the specific model of monitor used in isolation. *See id.*

Defendant argues it makes no difference how the monitors were maintained, configured, cleaned, or calibrated; what software, hardware, graphics cards, or other technical components were used in combination with the monitors; or what other factors exist that affected Defendant's diagnostic reading environment. (Doc. 107 at 17–20; Doc. 108 at 6–7.) Defendant argues discovery into any of these factors amounts to a fishing expedition that would allow Relator to formulate his theory at trial. (Doc. 107 at 19.) But the claim pleaded in the SAC is clear.[7] Whether the monitors Defendant used fell below minimum efficacy standards, i.e., the extent to which the readings conducted on the monitors lacked accuracy and reliability, is a key issue in the case. The SAC alleges that software, graphics cards, calibration, and other technical components and factors bear on

---

[7] Additionally, in the parties' Rule 26(f) Joint Report, Relator explained he must prove: (1) Defendant used equipment falling below minimum efficacy standards; (2) Defendant understood or was recklessly indifferent to those deficiencies; and (3) the deficiencies were material. (Doc. 67 at 3.) Relator's position on the nature of the case was that "Defendant . . . submitted false claims to Medicare when it billed CMS for diagnostic radiological readings performed on over-the-counter computer (COTS) monitors that fell below medical standards. . . . those non-compliant devices compromised the accuracy or reliability of radiological interpretations." (*Id.* at 2.) Relator's list of disputed issues included: (1) whether the use of consumer-grade monitors is appropriate or medically reasonable under accepted medical imaging standards; (2) the reliability of consumer grade monitors for making primary diagnostic reads and whether they meet professional standards for accuracy, resolution, and consistency; (3) whether use of consumer grade monitors compromised diagnostic accuracy, leading to potential misdiagnoses or inaccuracies in patient care; and (4) the sufficiency of expert testimony on medical imaging standards, the adequacy of Defendant's equipment, and the impact on diagnostic accuracy. (*Id.* at 5.) Defendant has received sufficient notice that the functionality of the monitors and the efficacy of readings performed on the monitors are core aspects of Plaintiff's claim.

the efficacy of diagnostic readings performed on the non-FDA cleared, consumer grade monitors. (*See* Doc. 53 ¶¶ 45, 48, 52–56, 64–65, 68, 83, 94.) Thus, how Defendant's monitors function in practice, as affected by a combination of technical factors, is, at minimum, a legitimate topic of discovery. *Cf. DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 880 n.20 (N.D. Ill. 2021) (explaining that the meaning of "relevance" in discovery is much broader than the meaning of "relevance" under Federal Rule of Evidence 401); Fed. R. Evid. 401 (evidence is relevant if it (a) has any tendency to make a fact more or less probable, and (b) is of consequence in determining the action). To restrict discovery to the model type and specifications of the monitors themselves would be to improperly narrow the issues in the case.

Defendant argues discovery must be limited to the type of monitors because Relator lacks knowledge about other factors that might affect Defendant's reading environment and therefore failed to plead facts relating to deficiencies other than the type of monitors. (Doc. 107 at 18–19, 19 n.2.) This argument fails because (1) discovery is not strictly limited to facts alleged in the pleadings; and (2) other factors affecting the reading environment are relevant to the parties' claims and defenses. Relator alleges that prior to filing the lawsuit, Relator "sought more information on Rad Ltd's technology ecosystem and configuration. . . . to discern whether Rad Ltd had reached an economically viable solution for use of consumer grade displays while meeting appropriate standards for radiological technology." (Doc. 53 ¶ 83.) Whether Defendant found such a solution that met medical standards is a defense to Relator's claims that the radiological services provided fell below minimum efficacy requirements. Defendant acknowledges as much. (Doc. 107 at 19 n.5 ("[T]here are many reasons why Rad Ltd. might decline to produce information that could support its defenses.")).[8] Thus, facts relevant to that question fall within the scope of

---

[8] Defendant suggests it is withholding information about its reading environment because of "burden, expense, and the desire to keep proprietary information confidential from individuals known for filing serial or meritless lawsuits." (Doc. 107 at 19.) These are not relevance objections, and moreover, they are not explained in sufficient detail to meet Defendant's burden of showing the discovery of relevant information should be prohibited. *See Hipschman*, 738 F. Supp. 3d at 1337; *Jane Doe 130 v. Archdiocese of Portland in Or.*, 717 F. Supp. 2d at 1126 ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.").

- 13 -

discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense*." (emphasis added)).[9] The Court agrees with Relator that Defendant "cannot block discovery into the controls, software, and calibration practices that determine whether its platform met minimum efficacy standards only to later argue that it took adequate measures." (Doc. 110 at 6.)

Defendant's argument that discovery should be limited to the types of monitors might be persuasive if Relator's FDA-approval theory were still at issue. In that hypothetical situation, the legal claim would be based on a regulation or rule mandating the use of FDA-cleared or approved monitors. Thus, Relator's FCA claim would hinge on Defendant's violation of that rule, through the use of non-FDA-cleared or approved monitors, regardless of efficacy. But Relator's reasonable and necessary claim is based on the efficacy of the diagnostic readings produced on the monitors, and liability hinges on whether Defendant's readings met accepted medical standards despite being performed on consumer grade monitors.

Defendant also argues its relevance objection is supported by the declaration of Lindsey Baldwin, Director of the Division of Practitioner Services with CMS. (Doc. 108 at 8–9; *see* Doc. 107-1 at 4–6.) First, while Baldwin's testimony may be evidence relevant to the parties' claims and defenses in the case, it has no bearing on whether other evidence is or is not discoverable. *See, e.g.*, *Gordon v. Nexstar Broad., Inc.*, No. 18-CV-0007, 2018 WL 5920781, at *5 (E.D. Cal. Nov. 13, 2018) (quoting *FTC v. AMG Servs.*, 2015 WL 5097526, at *8 (D. Nev. Aug. 28, 2015)) ("A party may not resist discovery by challenging the merits of a claim or defense."). Second, Baldwin's amended declaration provides, "the statements in this declaration are made individually and only on the basis of my personal knowledge, . . . and I otherwise lack subject matter expertise to opine on medical reasonableness or medical necessity in this matter." (Doc. 107-1 at 6 ¶¶ 5–6.) Thus, it appears that Baldwin's declaration does not provide the official positions of CMS with

---

[9] Put another way, steps Defendant took to improve the efficacy of readings performed on its monitors are relevant to Relator's *claim* because they have a tendency to make it more likely that Defendant provided services that met efficacy standards and were therefore reasonable and necessary.

respect to Relator's reasonable and necessary claim. Third, Defendant seems to argue that Relator, when confronted with Baldwin's statement in the original declaration that CMS "knows of no basis to deny the payment of claims for radiological services rendered to Medicare beneficiaries based on the type of monitor used," realized he could not prove the materiality element of his claim and then drafted discovery requests in search of novel theories of liability. (*See* Doc. 107 at 5–6.) But Relator's first set of discovery requests was served months before Baldwin's original declaration was prepared. (*See* Doc. 101 at 2 ("Relator served written discovery on Rad Ltd in August 2025."); Doc. 103-1 at 110–11 (declaration signed on November 20, 2025).)

In sum, the Court overrules Defendant's relevance objections to RFPs and Interrogatories seeking information on Defendant's workstation hardware and configuration, including calibration, calibration software, quality assurance, and related operational controls.

### B. Remaining Objections & Alleged Deficiencies

#### 1. Use of Rule 33(d)

Defendant argues the references in its interrogatory responses to production of documents under Rule 33(d) demonstrate that it agrees to produce responsive documents, and therefore, there is no deficiency for the Court to resolve. (Doc. 107 at 20.) However, a party invoking Rule 33(d) must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them." Fed. R. Civ. P. 33(d). Defendant's responses, which invoke Rule 33(d) but fail to identify any records or documents whatsoever, are therefore deficient. *See* Fed. R. Civ. P. 37(a)(4); *see also, e.g.*, *WATM LLC v. Payment All. Int'l, Inc.*, No. 24-CV-00405, 2025 WL 1736609, at *6–7 (W.D. Wash. June 23, 2025) (reasoning interrogatory responses that only stated that business records "will be produced" pursuant to Rule 33(d) or that the party "would produce responsive documents" were deficient); *Davis v. Pinterest, Inc.*, No. 19-CV-7650, 2021 WL 3044957, at *3 (N.D. Cal. July 20, 2021) (holding party's Rule 33(d) reference insufficient where it did not specify any records and "just gesture[d] at forthcoming

document productions"). Defendant's amended responses must comply with the Rule, i.e., by answering the interrogatories or specifying records in detail from which the answer may be determined and producing those records. *See* Fed. R. Civ. P. 33(b), (d).

### 2. Meet-and-Confer Responses

Relator argues Defendant's initial responses were deficient because they "stated only that [Defendant] would 'meet and confer' rather than stating whether it would produce documents or if materials were instead withheld based on objections." (Doc. 101 at 13–14.) Defendant argues the purported "meet-and-confer" deficiency is moot in light of its supplemental responses and agreement to produce responsive documents. The Court agrees that the initial responses were deficient, and Defendant must provide compliant responses and produce responsive documents as explained throughout this Order.

### 3. "Merits-Based" Objections

Relator argues Defendant improperly asserted relevance objections based on an inaccurate characterization of Relator's theory of the case that assumes Defendant was required to use FDA-cleared equipment for non-mammographic radiological readings. (Doc. 101 at 14–15.) Defendant asserts it is not withholding information or declining to produce documents on the basis of these objections. (Doc. 107 at 21.) Be that as it may, these objections are flawed both because Relator's discovery requests do not assume that Defendant was required to use FDA-cleared equipment,[10] and because, to the extent Defendant challenges Relator's theory, "whether [Relator's] theory of the case is viable is not at issue at this juncture, and the Court need not weigh the merits of the [theory]." *Gordon*, 2018 WL 5920781, at *5. To the extent this objection is not moot, it is overruled.

### 4. Vague & Ambiguous FDA Terminology

Defendant asserts its vagueness and ambiguity objections are not frivolous because there is no "FDA Approval" for the monitors Defendant used to read non-mammographic

---

[10]   This Court's dismissal of Relator's FDA-approval claim was upheld by the Ninth Circuit. References to FDA-clearance in the SAC and discovery requests do not revive that claim. As explained above, with respect to Relator's reasonable and necessary claim, liability hinges on the efficacy of the readings performed on the monitors, as determined by authoritative evidence or general acceptance in the medical community, upon which FDA premarket clearance standards for medical devices may have some bearing.

imaging studies, and in any event, Defendant has agreed to produce documents and communications in response to the discovery requests for which it raises those objections. (Doc. 107 at 21–22.) As explained in the SAC, Relator refers to FDA approval and FDA clearance in the context of introducing, marketing, and selling devices used in medical practice; in this context, those terms do not imply that the FDA regulates the type of monitors that must be used in non-mammography radiology readings. To the extent this objection is not moot, it is overruled.

### 5.  Confidentiality, HIPAA, and Privilege Objections

Relator argues Defendant's blanket privilege objections do not justify nonproduction of documents. (Doc. 101 at 16.) Defendant asserts it is not withholding any materials on the basis of confidentiality, HIPAA, or privilege objections. (Doc. 107 at 22.) Defendant "acknowledges that it agreed to the Protective Order in the case," and therefore, at Relator's request, it agreed to remove confidentiality designations made to its initial discovery responses when serving supplemental responses. (*Id.*) The Court entered the Protective Order on April 22, 2025. (Doc. 81.) Defendant's initial discovery responses should have fully complied with it, and Relator should not have had to "request" Defendant comply with it months later. In any event, "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149. In Defendant's amended supplemental responses, Defendant must identify any material withheld on the basis of privilege in a privilege log and otherwise fully comply with the Protective Order.

### 6.  Preservation of Objections

Relator argues Defendant's supplemental discovery responses failed to cure deficiencies in its original responses because they explicitly preserve Defendant's original objections. (*See, e.g.*, Doc. 102 at 8; Doc. 103-1 at 189 (supplemental response to RFP No. 1 begins, "Subject to and without waiving its objections, . . .").) Defendant states it is "simply preserv[ing] objections in case issues cannot be resolved through the meet and confer process." (Doc. 108 at 10–11.) Based on Defendant's representations, the Court will

take Defendant at its word that it is no longer withholding documents based on the objections in its initial responses unless either an objection is specifically addressed in a supplemental response, or the supplemental response explicitly references and reasserts the entirety of the corresponding initial response.

### C. Specific Discovery Requests

To clarify its rulings, the Court will address each disputed discovery request individually and specify the action Defendant is compelled to take. In parallel with Relator's LRCiv 37.1(a) Statement of Disputes and Defendant's Response in Opposition to Relator's Statement of Disputes, (Docs. 102, 108), the Court first addresses the disputed RFPs, followed by interrogatories.

### 1. Requests for Production

#### a. RFP No. 1

RFP No. 1 states:

> Produce all documents and communications relating to Your acquisition, evaluation, or use of non-FDA cleared or approved displays, monitors, or radiology workstations (including, but not limited to, Dell UP3017 UltraSharp 30", Dell E2318H 23", or other consumer-grade monitors). This includes documents sufficient to show whether such devices were FDA cleared, FDA-approved, or marketed without premarket clearance.

(Doc. 103-1 at 187.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications regarding Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 189.) Defendant argues it has already produced some responsive materials and Relator's Motion should be denied to the extent it seeks additional, irrelevant documents. For the reasons explained above, Defendant's relevance objection is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld on the basis of any other objections; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 1, including documents related to Defendant's acquisition, evaluation, and use of consumer-grade monitors for non-mammographic diagnostic readings of

radiological images.

### b. RFP No. 2

RFP No. 2 states:

> Produce all documents and communications, whether internal or external, from July 1, 2013 through December 31, 2021, relating to Your decisions to use non-FDA approved displays or monitors (including the Dell UP3017 UltraSharp 30" and Dell E2318H 23" monitors) for the provision of non-mammographic, diagnostic radiological readings, including meeting minutes and documents relating to cost and regulatory considerations.

(Doc. 103-1 at 189.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications regarding Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 190–91.) Relator argues the supplemental response is deficient because it preserves objections and materially narrows what Defendant will produce compared to what RFP No. 2 seeks. (Doc. 102 at 12.) Defendant states it has produced some materials responsive to this request and agreed to produce others. (Doc. 108 at 13.) To the extent Defendant's response narrows and rewrites RFP No. 2, Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld on the basis of any objections; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 2 as written, including meeting minutes and documents relating to cost and regulatory considerations.

### c. RFP No. 3

RFP No. 3 states:

> Produce all documents and communications, whether internal or external, from July 1, 2013 through December 31, 2021, relating to the use of FDA-approved displays or monitors (including the Dell UP3017 with QUBYX PerfectLum Bundle or X-Cal LCD calibration software) for the provision of non-mammographic, diagnostic radiological readings.

(Doc. 103-1 at 191.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications regarding Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections, including its objections to producing information regarding calibration software because that information is not relevant.

- 19 -

(*Id.* at 192.) Defendant's relevance objection to producing information regarding calibration software is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld on the basis of any other objections; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 3, including documents related to calibration software used in conjunction with displays.

#### d. RFP No. 4

RFP No. 4 states:

> Produce all documents and communications, whether internal or external, from July 1, 2013 through December 31, 2021, relating to displays or monitors You considered or used for the provision of non-mammographic, diagnostic radiological readings, including materials addressing monitor specifications (such as screen size, resolution, grayscale contrast, and luminance), limitations, required calibration procedures, quality assurance testing, and durability.

(Doc. 103-1 at 192.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications regarding specifications for the monitors Rad Ltd. used for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections, including its objections to producing information regarding calibration procedures, quality assurance testing, and durability because that information is not relevant.

(*Id.* at 192–93.) Defendant's relevance objection to producing information regarding calibration procedures, quality assurance testing, and durability is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld on the basis of any other objections; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 4, including materials addressing calibration procedures, quality assurance testing, and durability of monitors and displays used for non-mammographic diagnostic radiological readings.

#### e. RFP No. 5

RFP No. 5 states:

> Produce all documents and communications, from July 1, 2013 through December 31, 2021, related to display software (including but not

limited to the X-Cal LCD Monitor Calibration Software) You considered or used in conjunction with displays or monitors for Your provision of non-mammographic, diagnostic radiological readings.

(Doc. 103-1 at 194.) Defendant's supplemental response states: "Subject to and without waiving its objections, Rad Ltd. maintains its objections to this Request in its entirety because the documents sought are not relevant." (*Id.* at 195.) Defendant's relevance objection to producing information related to display software is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld on the basis of any other objections; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 5, including materials related to display software considered or used in conjunction with monitors or displays used for non-mammographic diagnostic radiological readings.

### f.   RFP No. 6

RFP No. 6 states:

Produce all documents and communications, whether internal or external, from July 1, 2013 through December 31, 2021, relating to any meeting, event, webinar, or conference that You attended in which devices or technology for diagnostic radiological readings were discussed.

(Doc. 103-1 at 195.) Defendant's supplemental response states:

Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications regarding meetings, events, webinars, or conferences inasmuch as they relate to the monitors Rad Ltd. used for non-mammographic diagnostic readings of radiological images, to the extent any such materials exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 196.) Relator argues the response is deficient because it materially narrows the scope of the request. (Doc. 102 at 21–23.) To the extent Defendant's objections narrow the scope on the grounds that technology, other than the type of monitors, contributing to the diagnostic reading environment is irrelevant, the objections are overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld on the basis of any other objections; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 6, including materials related to meetings and events in which diagnostic

technology—other than monitor type—was discussed.

### g. RFP No. 7

RFP No. 7 states:

> Produce all documents and communications, whether internal or external, from July 1, 2013 through December 31, 2021, relating to any calibration, maintenance, or other quality assurance measures You took with respect to the displays or monitors and related hardware You use for Your provision of non-mammographic, diagnostic radiological readings.

(Doc. 103-1 at 196–97.) Defendant's supplemental response states: "Subject to and without waiving its objections, Rad Ltd. maintains its objections to this Request in its entirety because the documents sought are not relevant." (*Id.* at 197.) Defendant's relevance objection to producing information related to calibration, maintenance, or other quality assurance measures it took with respect to displays, monitors, or related hardware is overruled. *See* discussion *supra* Section III.A. Defendant must produce responsive, non-privileged documents within the full scope of RFP No. 7.

### h. RFP No. 8

RFP No. 8 states:

> Produce all documents and communications, whether internal or external, relating to any internal or external audit, inspection, or evaluation of the accuracy, completeness, correctness, or reliability of the diagnostic radiological readings You performed from July 1, 2013 through December 31, 2021.

(Doc. 103-1 at 197–98.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications reflecting an audit, inspection, or evaluation of non-mammography readings related to the types of monitors used, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections, including its objections to producing documents and communications reflecting audits, inspections, or evaluations of radiological readings that are not based on the monitors used because that information is not relevant.

(*Id.* at 199.) Relator argues the response improperly narrows the scope of the request because audits, inspections, and evaluations of diagnostic readings are relevant regardless of whether the evaluation ultimately or expressly attributes any issues to monitors. (Doc. 102 at 25–26.) The Court agrees. Defendant's objection that documents and communications reflecting audits, inspections, or evaluations of radiological readings not

based on the monitors used are not relevant is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld on the basis of any other objections; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 8.

### i.   RFP No. 9

RFP No. 9 states: "Produce all documents relating to any errors, omissions, or misdiagnoses in Your diagnostic radiological readings performed from July 1, 2013 through December 31, 2021." (Doc. 103-1 at 199.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents reflecting any errors, omissions, or misdiagnoses in non-mammography readings that were based on the monitors used, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of documents to produce in response to this Request. Rad Ltd. otherwise stands on its objections, including its objections to producing documents reflecting errors, omissions, or misdiagnoses in radiological readings that are not based on the monitors used because that information is not relevant.

(*Id.* at 200.) Relator argues the monitors-only limitation improperly narrows the scope of the request. (Doc. 102 at 27–29.) The Court agrees. Errors and misdiagnoses in diagnostic readings are relevant regardless of whether Defendant identified them as being caused by the monitors used. Defendant's relevance objection is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 9 without limiting production to materials it deems "based on the monitors used."

### j.   RFP No. 10

RFP No. 10 states:

> Produce all documents relating to any state medical board complaints, medical malpractice lawsuits, or other legal or regulatory investigations, claims or proceedings involving Your associated radiologists and their performance of diagnostic radiological readings from July 1, 2013 through December 31, 2021.

(Doc. 103-1 at 200–01.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to

- 23 -

produce non-privileged documents reflecting any state medical board complaints, medical malpractice lawsuits, or other legal or regulatory investigations, claims or proceedings involving Rad Ltd.'s radiologists related to non-mammography readings that were based on the monitors used, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of documents to produce in response to this Request. Rad Ltd. otherwise stands on its objections, including its objections to producing documents reflecting any state medical board complaints, medical malpractice lawsuits, or other legal or regulatory investigations, claims or proceedings involving Rad Ltd.'s radiologists that are not based on the monitors used because that information is not relevant.

(*Id.* at 202.) For the reasons discussed above, *see supra* Section III.C.1(h)–(i), Defendant's relevance objection is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 10 without limiting production to materials it deems "based on the monitors used."

### k.  RFP No. 11

RFP No. 11 states:

Produce all documents relating to any sanctions, adverse findings, adverse rulings, or other remedial actions contrary to Your interests or those of Your associated physicians, related to those physicians' performance of diagnostic radiological readings, from July 1, 2013 through December 31, 2021.

(Doc. 103-1 at 202.) Defendant's supplemental response states:

Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents reflecting any sanctions, adverse findings, adverse rulings, or other remedial actions against Rad Ltd. or its radiologists related to the monitors used for non-mammography readings, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of documents to produce in response to this Request. Rad Ltd. otherwise stands on its objections, including its objections to producing documents reflecting any sanctions, adverse findings, adverse rulings, or other remedial actions against Rad Ltd. or its radiologists that are not based on the monitors used because that information is not relevant.

(*Id.* at 203–04.) For the reasons discussed above, *see supra* Section III.C.1(h)–(i), Defendant's relevance objection is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 11 without limiting production to materials it deems "based on the monitors used."

### l. RFP No. 12

RFP No. 12 states: "Produce all documents and communications, from July 1, 2013 through December 31, 2021, between You and CMS relating to Your provision of non-mammographic, diagnostic radiological readings." (Doc. 103-1 at 204.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications between Rad Ltd. and CMS regarding the monitors used for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of documents or communications to produce in response to this Request. Rad Ltd. otherwise stands on its objections, including its objections to producing documents and communications between Rad Ltd. and CMS that are not about the monitors used because that information is not relevant.

(*Id.* at 204–05.) Relator misstates Defendant's supplemental response to RFP No. 12 as the supplemental response to RFP No. 14. (*Compare* Doc. 102 at 33, *with id.* at 35–36.) Thus, Relator does not make specific arguments against Defendant's objections to RFP No. 12. However, for the reasons discussed above, *see supra* Section III.C.1(h)–(i), Defendant's relevance objection is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 12 without limiting production to materials "regarding the monitors used."

### m. RFP No. 13

RFP No. 13 states:

> Produce all communications, from July 1, 2013 through December 31, 2021, between You and CMS relating to the use of particular displays, monitors, or display software for the provision of non-mammographic, diagnostic radiological readings.

(Doc. 103-1 at 205.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications between Rad Ltd. and CMS regarding the monitors used for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of documents or communications to produce in response to this Request. Rad Ltd. otherwise stands on its objections.

(*Id.* at 206.) For the reasons discussed above, Defendant's relevance objection to

communications relating to the use of displays or display software is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce any responsive, non-privileged CMS communications.

### n.  RFP No. 14

RFP No. 14 states: "Produce all claims You submitted to CMS from July 1, 2013 through December 31, 2021, seeking payment for the provision of non-mammographic, diagnostic radiological readings." (Doc. 103-1 at 206.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce claims data for non-mammographic diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries from July 1, 2013 to December 31, 2021, to the extent it exists and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 207–08.) Relator argues Defendant's response fails to comply with Rule 34 and narrows the scope of the request—from "all claims" to claims data for "diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries"— "without confirming whether that is intended as a complete production for this Request or an objection-based limitation." (Doc. 102 at 36.) Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what is being withheld and why; and (b) produce any responsive, non-privileged materials.

### o.  RFP No. 15

RFP No. 15 states: "Produce all documents showing all payments that You received from CMS for the provision of non-mammographic, diagnostic radiological readings from July 1, 2013 through December 31, 2021." (Doc. 103-1 at 208.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce payment data associated with claims for non-mammographic diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries from July 1, 2013 to December 31, 2021, to the extent it exists and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 209.) Relator argues Defendant's response to RFP No. 15—like Defendant's

response to RFP No. 14—fails to comply with Rule 34 and narrows the scope of the request "without confirming whether that is intended as a complete production for this Request or an objection-based limitation." (Doc. 102 at 38.) Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what is being withheld and why; and (b) produce any responsive, non-privileged materials.

#### p.  RFP No. 18

RFP No. 18 states:

> Produce all documents and communications, including emails, text messages, meeting minutes, or memoranda, between You (including Your employees, officers, directors, contractors, or agents) and Ron Cornett concerning the decision to acquire, implement, or use any monitor, display, or radiology workstation that was not cleared or approved by the FDA for diagnostic purposes. This request also includes communications with any third-party vendors or consultants regarding the use of Dell or other consumer-grade monitors for diagnostic radiology.

(Doc. 103-1 at 211.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications regarding Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images, including communications regarding those monitors that involve Ron Cornett or vendors, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 213.) Relator argues the response fails to comply with Rule 34 and rewrites the request by agreeing only to produce communications regarding Defendant's decision to use certain monitors. (Doc. 102 at 40.) Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what is being withheld and why; and (b) produce any responsive, non-privileged communications within the full scope of RFP No. 18, as written.

#### q.  RFP No. 20

RFP No. 20 states:

> Produce all training materials, policy manuals, standard operating procedures, compliance guidelines, or other internal or external guidance provided or made available to Your radiologists, information technology personnel, administrators, or other staff concerning the selection, configuration, use, or adequacy of diagnostic monitors, radiology workstations, or display standards (including FDA, ACR, or DICOM requirements).

(Doc. 103-1 at 215.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents regarding Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. However, Rad Ltd. otherwise stands on its objections, including its objections to producing training, policy, or guidance documents regarding Rad. Ltd.'s monitors or their configuration that were given to Rad Ltd.'s radiologists because that information is not relevant.

(*Id.* at 217.) For the reasons discussed above, *see supra* Section III.A, Defendant's relevance objection is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 20, including training, policy, and guidance documents concerning the selection, configuration, use, and adequacy of diagnostic monitors and workstations.

### r.  RFP No. 21

RFP No. 21 states:

> Produce all communications, including emails, text messages, meeting notes, and memoranda, with any vendors, suppliers, or consultants concerning the actual or potential acquisition, configuration, implementation, or suitability of consumer-grade or non-FDA cleared monitors or displays for use in diagnostic radiology.

(Doc. 103-1 at 217.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged communications regarding Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images, including communications regarding those monitors that involve vendors, to the extent any exist and can be located after a reasonable search. However, Rad Ltd. otherwise stands on its objections, including its objections to producing communications regarding monitor configuration.

(*Id.* at 218–19.) For the reasons discussed above, *see supra* Section III.A, Defendant's relevance objection is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 21, including communications with vendors, suppliers, or consultants concerning acquisition, configuration, implementation, or suitability of consumer-grade monitors.

//

### s.  RFP No. 22

RFP No. 22 states: "Produce all documents and communications, including but not limited to emails, text messages, contracts, purchase orders, invoices, proposals, or technical specifications, exchanged between You and Double Black Imaging Corp." (Doc. 103-1 at 219.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged communications with Double Black Imaging Corp. that relate to Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images or those monitors' specifications, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 220.) Relator argues the response fails to comply with Rule 34 and narrows the request by agreeing only to produce communications relating to Defendant's decision to use certain monitors. (Doc. 102 at 45.) To the extent Defendant asserts a relevance objection to producing broader technical or procurement communications, including those related to acquisition, implementation, configuration, and suitability, the objection is overruled. *See supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what is being withheld and why; and (b) produce any responsive, non-privileged documents and communications within the full scope of RFP No. 22, including contracts, purchase orders, invoices, and proposals.

### t.  RFP No. 24

RFP No. 24 states:

> Produce all documents and communications, including emails, text messages, contracts, purchase orders, invoices, proposals, or technical specifications, exchanged between You and Dell, Inc. (or its affiliates or agents) concerning the acquisition, configuration, testing, implementation, or suitability of Dell monitors, displays, or workstations for use in diagnostic radiology.

(Doc. 103-1 at 221–22.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications with Dell, Inc. that relate to Rad Ltd.'s decision to use certain monitors for non-mammographic diagnostic readings of radiological images or those monitors' specifications, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections, including its objections to producing documents and communications regarding monitor configuration and testing because that information is not relevant.

(*Id.* at 223.) For the reasons discussed above, *see supra* Section III.A, Defendant's relevance objection to producing information regarding configuration and testing is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld and why; and (b) produce responsive, non-privileged documents and communications within the full scope of RFP No. 24, including those related to configuration and testing.

### u. RFP No. 25

RFP No. 25 states:

> Produce all literature, scientific studies, publications, articles, presentations, research papers, guidance documents, or other materials that You contend support or otherwise justify the use of consumer-grade or non-FDA cleared/approved monitors, displays, or workstations for primary diagnostic radiological readings. This request includes all documents identified in Your response to Interrogatory No. 16.

(Doc. 103-1 at 223.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. responds that it is unaware of any literature, scientific studies, publications, articles, presentations, research papers, guidance documents, or other materials indicating that Rad Ltd. was required to use any particular type of monitor, or to refrain from using any particular type of monitor, for non-mammographic diagnostic readings of radiological images. Rad Ltd. otherwise stands on its objections.

(*Id.* at 224–25.) Relator argues the response fails to comply with Rule 34 and rewrites the request by stating Defendant is unaware of documents indicating it was required to use a particular type of monitor. (Doc. 102 at 49.) The Court agrees. Relator did not request production of documents "indicating that Rad Ltd. was required to use any particular type of monitor." As explained above, *see* discussion *supra* Section III.A, Relator's reasonable and necessary claim turns in part on whether readings performed on Defendant's consumer grade monitors met minimum efficacy standards. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what is being withheld and why; and (b) produce responsive documents within the full scope of RFP No. 25, as written.

//

//

### v. RFP No. 27

RFP No. 27 states:

> Produce all CMS, MAC, or other Medicare contractor bulletins, notices, FAQs, or educational materials received or maintained by You concerning diagnostic radiology equipment, technology standards, or billing requirements, and all documents reflecting Your internal distribution, review, or discussion of such materials.

(Doc. 103-1 at 226.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce CMS, MAC, or other Medicare contractor bulletins, notices, or educational materials in Rad Ltd.'s possession that concern the monitors to be used for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of documents to produce in response to this Request. Rad Ltd. otherwise stands on its objections.

(*Id.* at 228.) Relator argues the response fails to comply with Rule 34 and narrows the request by limiting production to materials that concern the monitors to be used. (Doc. 102 at 45.) For the reasons discussed above, to the extent Defendant asserts a relevance objection to producing educational materials that pertain to technology or radiology equipment other than monitors, that objection is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what is being withheld and why; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 27.

### w. RFP No. 29

RFP No. 29 states:

> Produce all documents sufficient to show the costs, amounts paid, or financial expenditures associated with each item of equipment, hardware, or software identified in response to Interrogatory No. 7. This request includes, without limitation, purchase orders, invoices, contracts, receipts, licensing agreements, subscription or maintenance fees, service contracts, and related accounting records.

(Doc. 103-1 at 230.) Defendant's supplemental response states: "Subject to and without waiving its objections, Rad Ltd. maintains its objection to this Request in its entirety because the documents sought are not relevant." (*Id.* at 231.) To the extent Defendant asserts a relevance objection based on its characterization of Relator's claim as limited to whether Defendant's monitors were per se improper, (*see* Doc. 108 at 37), that objection

is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what is being withheld and why; and (b) produce responsive, non-privileged documents sufficient to show the costs, amounts paid, or expenditures for the specific items identified in response to Interrogatory No. 7.

### x.  RFP No. 30

RFP No. 30 states:

> Produce all documents and communications, whether internal or external, reflecting any patient complaints, inquiries, grievances, or legal claims received by You from July 1, 2013 through December 31, 2021, relating to the quality of diagnostic radiology services provided by You. This request includes, without limitation, complaints or claims concerning missed diagnoses, image quality, monitor adequacy, workstation performance, delays in service, or any other issues relating to the adequacy, safety, or effectiveness of diagnostic radiology services.

(Doc. 103-1 at 231–32.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to agree to [sic] produce non-privileged documents and communications reflecting any patient complaints, inquiries, grievances, or legal claims related to the monitors used for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of documents to produce in response to this Request.

(*Id.* at 233.) Relator argues the response fails to comply with Rule 34 and improperly narrows the request by limiting production to patient complaints or claims related to the monitors used. For the reasons discussed above, *see supra* Section III.C.1.(h)–(j), Defendant's stated limitation is overruled. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld; and (b) produce responsive, non-privileged documents within the full scope of RFP No. 30 without limiting production to materials it deems "related to the monitors used."

### y.  RFP No. 32

RFP No. 32 states:

> All communications between You (including Your counsel, employees, agents, or representatives) and any recipient of a subpoena issued by You in this action that relate to this case or to the subpoena or subpoena process, including but not limited to correspondence regarding service, compliance, responses, or production of documents.

(Doc. 103-1 at 282.) Defendant objects on relevance grounds. (Doc. 103-1 at 282–83.) In

relevant part, Defendant's response states:

> Subject to and without waiving its objections, Rad Ltd. will produce its counsel's communications with CMS regarding the subpoena. By doing so, Rad Ltd. does not concede—and expressly reserves—its objections to the relevancy of those communications. Rad Ltd. otherwise objects to this Request and declines to produce documents, including communications with other recipients of third-party subpoenas issued by Rad Ltd.

(*Id.* at 283.) Relator argues the response remains deficient because it preserves objections, refuses to produce communications with subpoena recipients other than CMS, and fails to state whether responsive materials are being withheld. (Doc. 102 at 55–56.) Relator asks the Court to overrule Defendant's relevance objection, including with respect to the CMS communications Defendant has already produced. (*Id.*; *see* Doc. 110 at 7.) Defendant maintains that contemporaneous communications between it and subpoena recipients are not relevant. (Doc. 108 at 39–40.)

With respect to Defendant's counsel's communications with CMS, there does not appear to be any dispute remaining for the Court to resolve. Defendant has produced its communications with CMS regarding the subpoena and declaration. The Court notes those communications have proven relevant; their discovery led to the withdrawal and amendment of the initial Baldwin declaration. (*See* Doc. 110 at 7.) With respect to Defendant's communications with other subpoena recipients, Defendant's relevance objection is overruled. If Defendant has subpoenaed another third party for potential evidence, the documents and evidence Defendant receives in response to the subpoena are plainly relevant. *See Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 385 F. Supp. 3d 863, 873 (D. Ariz. 2019) ("The test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rule 26."); Fed. R. Civ. P. 26(b) (the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense"). Correspondence "that relate[s] to this case or to the subpoena or subpoena process," including "service, compliance, responses, or production of documents," is sufficiently related to the subpoenaed information or evidence and, like the CMS communications, may bear on the weight of such evidence. Additionally, the case Defendant cites is distinguishable. (*See* Doc. 108 at 39 (citing *Free Steam Media Corp. v.*

- 33 -

*Alphonso, Inc.*, No. 17-mc-00011, 2017 WL 11632962, at *6 (C.D. Cal. May 4, 2017)).) In *Free Stream*, a patent plaintiff sought to compel *a third party* to produce "any communications concerning the . . . litigation between [the third party] and [the defendant]." 2017 WL 11632962, at *1. The court denied the request in part because the plaintiff could have requested the communications directly from *the defendant*, as Relator has done here. *Id.* at *6. Defendant must: (a) provide a response that complies with Rule 34, specifying what will be produced and what will be withheld (and on what basis); and (b) produce responsive, non-privileged documents within the full scope of RFP No. 32, to the extent any exist.

### 2. Interrogatories

#### a. Interrogatory No. 1

Interrogatory No. 1 states: "Identify all radiologists employed by or associated with Your practice from July 1, 2013 through December 31, 2021, including for each person their full name, National Provider Identifier (NPI) number, and dates of association with Your practice." (Doc. 103-1 at 240.) Defendant provided a list of radiologists that included dates of employment but not NPI numbers. (Doc. 103-1 at 241–44.) Relator argues the NPI numbers are relevant because they are standardized identifiers necessary to link identified radiologists to Medicare claims and payment data, and to make sense of claims and payment materials produced in response to RFPs. (Doc. 102 at 57.) Defendant summarily argues that the NPI numbers are irrelevant. (Doc. 108 at 41.) As there is no apparent reason to withhold the NPI numbers, and Defendant provides none, Defendant must: (a) supplement Interrogatory No. 1 by providing the NPI number for each identified radiologist; or (b) produce a Rule 33(d) dataset or document set that clearly maps each identified radiologist to his or her NPI.

#### b. Interrogatory No. 2

Interrogatory No. 2 states:

> Identify all claims You submitted to CMS from July 1, 2013 through December 31, 2021, seeking payment for the provision of non-mammographic diagnostic radiological readings. For each claim, state the date of submission; the name of the rendering physician; the CPT code(s)

identified in the claim; any CPT code modifier(s), including those for technical and professional components; and the amount of payment sought.

(Doc. 103-1 at 244.) Defendant's supplemental response states:

Subject to and without waiving its objections, Rad Ltd. will agree to produce claims data under Rule 33(d) for non-mammographic diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries from July 1, 2013 to December 31, 2021, to the extent it exists and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 245.) Relator argues the response is deficient because it (1) invokes Rule 33(d) without identifying records as Rule 33(d) requires, and (2) narrows the scope to "traditional Medicare beneficiaries" and x-ray, CT, and MRI readings. (Doc. 102 at 58–59.) To the extent Defendant asserts a relevance objection on grounds discussed above, the objection is overruled. Defendant does not attempt to justify the limitations described in its response.[11] Thus, Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 2; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### c.  Interrogatory No. 3

Interrogatory No. 3 states:

Identify all CPT codes and CPT code modifiers (including those for technical and professional components) You utilized in submitting claims for non-mammographic, diagnostic radiological readings from July 1, 2013 through December 31, 2021.

(Doc. 103-1 at 245.) Defendant's supplemental response states:

Subject to and without waiving its objections, Rad Ltd. will agree to produce claims data under Rule 33(d) for non-mammographic diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries from July 1, 2013 to December 31, 2021, to the extent it exists and can be located after a reasonable search, which includes CPT codes. Rad Ltd. otherwise stands on its objections.

(*Id.* at 246.) For the reasons discussed above, *see supra* Section III.C.2.b., Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 3 identifying the CPT codes and modifiers used; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

---

[11]  In response to the alleged deficiencies, Defendant reiterates what it "has agreed to provide," and states Relator's Motion should be denied "[t]o the extent Relator seeks the production of additional, irrelevant information." (Doc. 108 at 41–42.)

### d. Interrogatory No. 4

Interrogatory No. 4 states:

> Identify all payments You received from CMS related to the claims identified in response to Interrogatory No. 2. For each payment, state the date of receipt; the amount received; and the claim number associated with the payment.

(Doc. 103-1 at 246.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce payment data under Rule 33(d) associated with claims for non-mammographic diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries from July 1, 2013 to December 31, 2021, to the extent it exists and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 247.) For the reasons discussed above, *see supra* Section III.C.2.b., Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 4 identifying the payments, dates, amounts, and claim numbers for the full responsive claims universe; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### e. Interrogatory No. 5

Interrogatory No. 5 states:

> Identify all instances in which CMS denied or partially denied a claim You submitted for non-mammographic diagnostic radiological readings on the basis that the services, or any component of same, were not reasonable and necessary for the diagnosis or treatment of illness or injury within the meaning of 42 U.S.C. § 1395y(a)(1)(A). For each such instance, state the date of the denial; the claim number; the reason provided by CMS for the denial; and the amount of reimbursement denied.

(Doc. 103-1 at 247.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents under Rule 33(d) showing claims for non-mammographic diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries from July 1, 2013 to December 31, 2021 that were denied by CMS based on medical necessity, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 248.) For the reasons discussed above, *see supra* Section III.C.2.b., Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 5 identifying the denials; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

#### f.  Interrogatory No. 6

Interrogatory No. 6 states:

> Identify all communications between You and CMS relating to the submission, processing, or payment of claims for non-mammographic diagnostic radiological readings, and the technology, equipment, or monitors used to perform such readings.

(Doc. 103-1 at 248.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged communications under Rule 33(d) between Rad Ltd. and CMS regarding the monitors Rad Ltd. used for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Subject to that agreement, Rad Ltd. responds that it is not aware of communications to produce in response to this Interrogatory.

(*Id.* at 249.) To the extent Defendant asserts a relevance objection on grounds discussed above, the objection is overruled. *See* discussion *supra* Section III.A. And for the reasons discussed above, *see supra* Section III.C.2.b., Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 6 identifying responsive CMS communications within its full scope and not limited to those "regarding the monitors"; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

#### g.  Interrogatory No. 7

Interrogatory No. 7 states:

> Identify and describe all equipment and software used in any workstation for the provision of non-mammographic diagnostic radiological readings from July 1, 2013 through December 31, 2021. This interrogatory includes, without limitation, the identification of displays, monitors, graphics cards, CPUs, peripherals, operating systems, image-processing software, calibration tools, and any other hardware or software components used in Your diagnostic workstations. For each item identified, state the make, model, version, or edition; the dates of use; and the purpose or function of the equipment or software within the workstation.

(Doc. 103-1 at 250.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. responds that its radiologists interpreted non-mammographic radiological images on Dell UP3017 and U3219Q monitors, and that Windows 7 and 10 were used as operating systems between the time period of January 1, 2016 and December 31, 2021. Rad Ltd. will supplement this response under Rule 26(e), including by producing non-privileged documents under Rule 33(d), to the extent additional responsive information becomes available through discovery. Rad Ltd. otherwise stands on its objections, including its objections to producing information regarding non-monitor equipment and software, graphics cards,

CPUs, peripherals, image-processing software, and calibration tools because that information is not relevant.

(*Id.* at 251.) Defendant's relevance objection to producing information related to non-monitor equipment and software, graphics cards, CPUs, peripherals, image-processing software, and calibration tools is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 7 identifying and describing non-monitor workstation hardware and software components; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### h.  Interrogatory No. 8

Interrogatory No. 8 states:

For each item of equipment or software identified in response to Interrogatory No. 7, state the cost or amount paid by You for its acquisition, installation, licensing, or use, including purchase price, subscription or licensing fees, maintenance charges, service contracts, and any other related expenditures.

(Doc. 103-1 at 251.) Defendant's supplemental response states: "Rad Ltd. maintains its objection to producing information in response to this Interrogatory because the information sought is not relevant." (*Id.* at 252.) Defendant's relevance objection to producing cost information related to non-monitor equipment and software, graphics cards, CPUs, peripherals, image-processing software, and calibration tools is overruled. *See* discussion *supra* Section III.A. Additionally, cost information is relevant to the elements of Relator's FCA claim. Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 8; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### i.  Interrogatory No. 10

Interrogatory No. 10 states:

Describe in detail the process by which You decided to use the displays, hardware, equipment, monitors, or software identified in response to Interrogatories No. 7. As part of your response, provide or describe all steps You took to determine whether Your use of non-FDA cleared or approved monitors or displays would render the related radiological services reasonable and necessary for the diagnosis or treatment of illness or injury (see 42 U.S.C. § 1395y(a)(1)(A)).

- 38 -

(Doc. 103-1 at 253–54.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications under Rule 33(d) regarding Rad Ltd.'s decision to use monitors for non-mammographic diagnostic readings of radiological images, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections, including its objections to producing information regarding non-monitor hardware, equipment, and software.

(*Id.* at 255.) Defendant's relevance objection to producing information regarding non-monitor hardware, equipment, and software is overruled. *See* discussion *supra* Section III.A. Relator argues the response is deficient also because it fails to identify specific documents under Rule 33(d) and does not answer the Interrogatory as written. Interrogatory No. 10 asks for a description of the process by which Defendant decided to use monitors and related technology. Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 10; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### j.  Interrogatory No. 11

Interrogatory No. 11 states:

> Describe in detail all policies, practices, and procedures in effect at any time from July 1, 2013 through December 31, 2021, relating to the maintenance of the displays, monitors, or other equipment You used for non-mammographic diagnostic radiological readings, including cleaning, software updates, quality control testing, calibrations, diagnostic checks, and holistic performance monitoring.

(Doc. 103-1 at 255.) Defendant's supplemental response states: "Subject to and without waiving its objections, Rad Ltd. maintains its objection to this Interrogatory in its entirety because the information sought is not relevant." (*Id.* at 256.) Defendant's relevance objection to producing information regarding maintenance of displays, monitors, and other equipment is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 11 describing all responsive maintenance, calibration, quality-control, and monitoring policies, practices, and procedures; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

//

**k. Interrogatory No. 12**

Interrogatory No. 12 states:

> Identify all facts supporting Your contention that Your use of non-FDA cleared or approved monitors and related software for diagnostic radiology was reasonable, safe and effective for such use, and in conformance with generally accepted standards of the relevant medical community.

(Doc. 103-1 at 256.) Defendant's supplemental response states: "Subject to and without waiving its objections, Rad Ltd. maintains that it has not made any contentions yet in this litigation." (*Id.* at 258.) Relator asks the Court to overrule Defendant's relevance and prematurity objections. (Doc. 102 at 71–72.) Defendant states that it has not objected to providing information in response to Interrogatory No. 12 and relies on its supplemental response to RFP No. 16, in which Defendant stated it will produce responsive materials that support its defenses. (Doc. 108 at 52.)

To the extent Defendant asserts a relevance objection based on its characterization of Relator's theory as limited to the monitors' per se unreasonableness, that objection is overruled. *See* discussion *supra* Section III.A. To the extent Defendant's answer incorporates its answer to RFP No. 16 by reference, "incorporation by reference is not a responsive answer." *Frederics v. City of Scottsdale*, No. CV-21-00001, 2022 WL 60546, at *1 (D. Ariz. Jan. 6, 2022) (quoting *Lawman v. City & County of San Francisco*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016)). To the extent Defendant objects to this interrogatory as premature, by claiming it has not made any contentions yet, the objection is overruled.[12]

"An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, . . . or some other time." Fed. R. Civ. P. 33(a)(2). "Courts generally look with disfavor to broad contention interrogatories served early during litigation." *Cardoza v. Bloomin' Brands,*

---

[12] As mentioned above, Defendant maintains it "has not objected" to Interrogatory No. 12. (Doc. 108 at 52.) If Defendant's answer does not state an objection, it is still "evasive or incomplete" and "must be treated as a failure to . . . answer." *See* Fed. R. Civ. P. 37(a)(4); 37(a)(3)(B)(iii).

*Inc.*, No. 13-CV-01820, 2015 WL 3875916, at *1 (D. Nev. June 22, 2015). "Contention interrogatories are premature if a propounding party cannot present plausible grounds showing that early answers . . . will efficiently advance litigation, or if the answering party does not have adequate information to assert its position." *Id.* (cleaned up) (quoting *Facedouble, Inc. v. Face.com, Inc.*, 2014 WL 585868, *2 (S.D. Cal. Feb. 13, 2014)).

Here, the contention interrogatory is not premature. First, Relator argues the refusal to answer deprives him "of the basic factual predicate necessary for expert analysis, depositions, and efficient discovery planning." (Doc. 102 at 72.) Thus, Relator has provided plausible grounds that an answer to Interrogatory No. 12 will efficiently advance litigation. Second, the contention interrogatory does not come early in litigation, and Defendant has adequate information to assert its position. Defendant was initially served with this lawsuit in 2021, the operative SAC was filed over two years ago, and initial disclosures were exchanged in July 2025, approximately one year ago. Importantly, Defendant filed an answer to the SAC on January 28, 2025, denying allegations that its radiological services fell below accepted medical standards and violated the reasonable and necessary requirement. (*See* Doc. 64.) The Court agrees with Relator. By denying the SAC's allegations Defendant has necessarily taken the position that its use of consumer-grade monitors was reasonable and necessary. Thus, Defendant must provide a complete, sworn response identifying the principal or materials facts supporting the contention described in Interrogatory No. 12 and supplement its response as discovery proceeds pursuant to Rule 26(e). To the extent Defendant relies on documents, Defendant must identify them with sufficient specificity. *Cf. Frederics*, 2022 WL 60546, at *1 (citing *Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc.*, 2012 WL 3238082, at *9 (D. Kan. Aug. 7, 2012) (stating contention interrogatories that call for a narrative account of a party's case are generally considered overbroad and unduly burdensome).)

### l.    Interrogatory No. 13

Interrogatory No. 13 states:

> Identify all meetings, events, webinars, or conferences (collectively, "Sessions") that You (or any person acting on Your behalf) attended in which

- 41 -

devices or technology used for diagnostic radiological readings were discussed. For each Session identified, state the title of the Session; the date of the Session; the person(s) who attended on Your behalf; and a detailed description of the topics presented or discussed.

(Doc. 103-1 at 258.) Defendant's supplemental response states:

Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents and communications under Rule 33(d) regarding meetings, events, webinars or conferences inasmuch as they relate to the monitors Rad Ltd. used for non-mammographic diagnostic readings of radiological images, to the extent any such materials exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 259–60.) Defendant's relevance objection to producing responsive information that relates to technology beyond monitor type is overruled. *See* discussion *supra* Section III.A. Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 13; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### m. Interrogatory No. 16

Interrogatory No. 16 states:

Identify all literature, scientific studies, publications, articles, presentations, research papers, guidance documents, or other materials that You contend support or otherwise justify the use of consumer-grade or non-FDA cleared/approved monitors, displays, or workstations for primary diagnostic radiological readings. For each item identified, state the full citation or bibliographic information; the author(s) and publisher; the date of publication; the manner in which You obtained or accessed the material; and the specific respect in which You contend the material supports Your use of such monitors, displays, or workstations.

(Doc. 103-1 at 266–67.) Defendant's supplemental response states:

Subject to and without waiving its objections, Rad Ltd. responds that it has not made any contentions yet in this litigation, but that Rad Ltd. is unaware of any literature, scientific studies, publications, articles, presentations, research papers, guidance documents, or other materials indicating that Rad Ltd. was required to use any particular type of monitor, or to refrain from using any particular type of monitor, for non-mammographic diagnostic readings of radiological images.

(*Id.* at 268.) For reasons discussed above, *see supra* Sections III.C.1.u., III.C.2.k., Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 16 identifying any materials it contends support its use of non-FDA cleared or approved monitors, displays, or workstations; or (b) confirm that no such materials exist.

//

- 42 -

**n. Interrogatory No. 18**

Interrogatory No. 18 states:

> Identify all hospitals, clinics, or medical facilities to or for which You provided diagnostic radiology services from July 1, 2013 through December 31, 2021, including the name of a contact person at each facility regarding Your diagnostic practices.

(Doc. 103-1 at 270.) Defendant's supplemental response states: "Subject to and without waiving its objections, Rad Ltd. maintains its objection to this Interrogatory in its entirety because the information sought is not relevant." (*Id.* at 271.) Defendant's relevance objection, based on Defendant's characterization of Relator's theory as limited to the monitors' per se unreasonableness (Doc. 108 at 55), is overruled. *See* discussion *supra* Section III.A. Additionally, the information sought by Interrogatory No. 18 is relevant for the reasons described in Relator's Statement of Disputes. (*See* Doc. 102 at 77.) Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 18; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

**o. Interrogatory No. 19**

Interrogatory No. 19 states:

> Identify all private insurers, managed care organizations, or third-party payers who denied, partially denied, or otherwise issued adverse determinations on claims submitted by You for diagnostic radiology services from July 1, 2013 through December 31, 2021, where the stated basis for the denial was that the services were not medically reasonable or necessary.

(Doc. 103-1 at 272.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents under Rule 33(d) showing claims for non-mammographic diagnostic readings of x-ray, CT, and MRI images performed for traditional Medicare beneficiaries from July 1, 2013 to December 31, 2021 that were denied by CMS based on medical necessity, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections, including its objections to producing information regarding denials by private insurers, managed care organizations, or third-party payers because that information is irrelevant.

(*Id.* at 273–74.) Relator argues adverse determinations by non-Medicare payers are relevant to notice, knowledge, materiality, and whether a pattern of reasonable and necessary coverage refusals exists that bears on Defendant's compliance culture and institutional

- 43 -

controls. (Doc. 102 at 79–80.) To the extent Defendant asserts a relevance objection based on its characterization of Relator's theory as limited to the monitors' per se unreasonableness (Doc. 108 at 56–57), that objection is overruled. *See* discussion *supra* Section III.A. To the extent they exist, adverse determinations by non-governmental payers "where the stated basis for the denial was that the services were not medically reasonable or necessary" fall under the broad definition of "relevance" in Rule 26(b). Such determinations may have some bearing on the element of scienter and whether Defendant was aware of alleged technological deficiencies in radiological services provided. While the materiality element looks to CMS's decision-making, non-governmental payer decisions may be relevant to whether Defendant's diagnostic radiological services met efficacy standards generally accepted in the medical community. Thus, Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 19; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### p. Interrogatory No. 20

Interrogatory No. 20 states:

> Identify all accreditations, certifications, or inspections of Your radiology practice by the American College of Radiology (ACR), Joint Commission, or any other accrediting body from July 1, 2013 through December 31, 2021, including the date, scope, and any findings or recommendations related to radiological services, workstations, or diagnostic imaging standards.

(Doc. 103-1 at 274.) Defendant's supplemental response states:

> Subject to and without waiving its objections, Rad Ltd. will agree to produce non-privileged documents under Rule 33(d) identifying accreditations, certifications, or inspections of Rad Ltd. conducted by the American College of Radiology (ACR) or Joint Commission between July 1, 2013 and December 31, 2021, to the extent any exist and can be located after a reasonable search. Rad Ltd. otherwise stands on its objections.

(*Id.* at 275.) To the extent Defendant asserts a relevance objection based on its characterization of Relator's theory as limited to the monitors' per se unreasonableness (Doc. 108 at 58), that objection is overruled. *See* discussion *supra* Section III.A. Relator argues Defendant's response improperly narrows the Interrogatory by excluding "any other accrediting body" from its answer. The Court agrees; Defendant fails to explain how accreditations from bodies other than the ACR and Joint Commission are irrelevant. *See*

*Hipschman*, 738 F. Supp. 3d at 1337 ("[T]he party opposing discovery has the burden of . . . clarifying, explaining, or supporting its objections."). Defendant must: (a) provide a sworn, complete answer to Interrogatory No. 20; or (b) produce responsive records pursuant to Rule 33(d) and identify them with the specificity required by the Rule.

### q. Interrogatory No. 21

Interrogatory No. 21 states:

> Identify all Communications between You (including Your counsel, employees, agents, or representatives) and any government agency, regulator, investigator, or other governmental entity, or any person or entity that received a subpoena issued by You in this action, that relate to the subject matter of this litigation, any subpoena, or the subpoena process.

(Doc. 103-1 at 289.) In relevant part, Defendant's response states:

> Subject to and without waiving its objections, Rad Ltd. will produce its counsel's communications with CMS regarding the subpoena. By doing so, Rad Ltd. does not concede—and expressly reserves—its objections to the relevancy of those communications. Rad Ltd. otherwise objects to this Interrogatory and declines to produce information or documents, including communications with other recipients of third-party subpoenas issued by Rad Ltd.

(*Id.* at 290.) Relator argues the response is deficient because: (1) it does not answer the Interrogatory as written, which calls for identification, rather than production, of communications, including non-written communications such as telephone calls and meetings; (2) it refuses to identify communications with any agencies or subpoena recipients other than CMS; and (3) communications with "subpoena recipients about subpoena service, compliance, information exchange, and production are directly relevant to discovery transparency and to evaluating the circumstances and reliability of third-party materials Rad Ltd has injected into this case." (Doc. 102 at 83–84.) Defendant maintains that its communications with third-party subpoena recipients are irrelevant, but it has agreed to produce its communications with CMS. (Doc. 108 at 59.) The Court agrees that Defendant's answer is not responsive to the interrogatory. With respect to Defendant's communications with subpoena recipients other than CMS, Defendant's relevance objection is overruled. *See* discussion *supra* Section III.C.1.y. Accordingly, Defendant must provide a complete answer identifying all responsive communications between Defendant and CMS, and any other subpoena recipients, including non-written

communications like phone calls and meetings.

### D. Fees & Costs

Finally, both parties argue they are entitled to fees and costs under Rule 37(a)(5). (*See* Doc. 101 at 19–21; Doc. 107 at 22–24.) Because the Court grants Relator's Motion, Rule 37(a)(5)(A) applies. *See* Fed. R. Civ. P. 37(a)(5)(A). Rule 37(a)(5)(A) requires the Court to order the non-moving party "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* However, "the Court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;[13] (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* "A position is substantially justified when 'the parties had a genuine dispute on matters on which reasonable people could differ as to the appropriate outcome.'" *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 513 (D. Nev. 2020) (quoting *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 609 (D. Nev. 2016)). The opposing party bears the burden of establishing substantial justification. *See id.* Defendant has failed to meet that burden.

The Court finds that Defendant's positions overall, in refusing to produce documents and answer interrogatories, were not substantially justified, and an award of expenses is not unjust in light of Defendant's conduct. The core relevance objection asserted in the discovery dispute and maintained in Defendant's supplemental responses mischaracterizes the SAC's allegations, the law governing Relator's single "reasonable and necessary" claim (as explained by the Ninth Circuit in this case), and the rules governing the scope of discovery. Defendant's statement that Relator has only ever alleged that the monitors Defendant used can never be used to provide reasonable and necessary diagnostic radiological services is not a reasonable interpretation of Relator's claim. Although the Defendant claims the argument was made in good-faith, it is not "grounded in the plain text of Relator's complaint." (Doc. 107 at 23–24.)

---

[13] The Court finds Relator attempted in good faith to obtain the disputed discovery prior to filing the Motion, and Defendant does not argue otherwise.

Additionally, almost all of Defendant's responses—both initial and supplemental—violate either Rule 33(b), Rule 33(d), or Rule 34(b). Defendant failed to answer interrogatories to the extent not objected to under Rule 33(b); failed to identify responsive records when invoking Rule 33(d) as an answer to interrogatories; and failed to state whether responsive materials were being withheld when objecting to RFPs as required by Rule 34(b)(2)(D). Defendant argues it has agreed to provide much of the information at issue in the Motion, but agreeing to produce responsive documents and provide responsive answers at an unspecified future time is not the same as producing the information in, or concurrently with, *the responses themselves*. Discovery responses may not be used as placeholders for future discovery responses.

Further, the timing of Defendant's actions—serving supplemental responses two days before the deadline for Relator's Motion to Compel, for example—appears aimed at strategically delaying these proceedings. While true that Defendant stated its intention to provide supplemental responses on multiple occasions, Defendant was aware of the briefing schedule when it served the responses two business days before the motion deadline. Moreover, the supplemental responses did not cure the violations of Rule 33 and Rule 34 in its initial responses, nor did they resolve more than a few of the dozens of disputed discovery requests at issue in the Motion.

## IV.    Conclusion

For the reasons explained above, the Court will grant Relator's Motion to Compel. The Court overrules Defendant's relevance objections to RFPs and Interrogatories seeking information on Defendant's workstation hardware and configuration, including calibration, calibration software, quality assurance, and related operational controls, because that information falls within the scope of discovery under Rule 26(b)(1).

Accordingly,

**IT IS ORDERED:**

1.    Relator's Motion to Compel Discovery (Doc. 101) is **granted**. Defendant must produce responsive documents and provide responsive answers to Relator's discovery

requests, in accordance with this Order, on a rolling basis, to be completed no later than sixty (60) days from the date of this Order. No responsive documents may be withheld beyond that date except on the basis of privilege, which must be supported by a timely and compliant privilege log. Any request for an extension of this deadline must be supported by good cause and approved by the Court.

2.    Defendant's objections to Relator's First and Second Requests for Production and Interrogatories are **overruled**, consistent with this Order's reasoning and explanations.

3.    Pursuant to Rule 37(a)(5)(A), Relator is awarded his reasonable expenses and attorney fees incurred in making the Motion. The parties shall meet and confer regarding the amount of fees and expenses awarded. If the parties are unable to reach agreement, Relator shall file an application for fees and expenses within 21 days of the date of this Order. Any application for an award of attorneys' fees must be accompanied by an electronic spreadsheet, to be e-mailed to the Court and opposing counsel, containing an itemized statement of legal services with all information required by Local Rule 54.2(e)(1). This spreadsheet must be organized with rows and columns and shall automatically total the amount of fees requested so as to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its memorandum of points and authorities filed in support of its application. A party opposing an application for attorneys' fees must e-mail the Court and opposing counsel a copy of the moving party's spreadsheet adding any objections to each contested billing entry (next to each row, in an additional column) so as to enable the Court to efficiently review the objections and recompute the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the non-moving party of the requirements of Local Rule 54.2(f) concerning its responsive memorandum.

//

4.   In accordance with the Court's order staying deadlines in this case while the Motion to Compel was pending, (*see* Doc. 109), an Amended Scheduling Order will issue separately.

Dated this 13th day of July, 2026.

Jennifer G. Zipps
Chief United States District Judge